**UNITED STATES**

v.

**Norman J. ELSTON, 140 64 7517, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 91 1879.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 28 June 1990.

Decided 17 March 1992.

Maj G.S. Warner, USMC, Appellate Defense Counsel.

LCDR Robert Smith, JAGC, USNR–R, Appellate Defense Counsel.

Capt M.K. Schaller, USMC, Appellate Defense Counsel.

LT R. Byrd, JAGC, USNR, Appellate Government Counsel.

Before FREYER, Senior Judge, and HOLDER and MOLLISON, JJ.

PER CURIAM:

Consistent with his pleas, the appellant was found guilty of a failure to go to his appointed place of duty, disobeying a non-commissioned officer, simple battery, and communicating threats in violation of Articles 86, 91, 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 891, 928, 934, respectively. A military judge sitting as a special court-martial sentenced the appellant to confinement for four months, forfeiture of $250.00 pay per month for four months, reduction to pay grade E–1, and a bad-conduct discharge. Pursuant to a pretrial agreement, the convening authority disapproved confinement in excess of 90 days, but otherwise approved the sentence as adjudged. The appellant asserts three errors were committed in his court-martial.[1] In particular, appellant asserts it was "plain error" for the military judge to admit in the pre-sentencing procedure a record of nonjudicial punishment that was accompanied by an advisement reflecting the appellant had refused the nonjudicial punishment.

■ In the pre-sentencing procedure of trials by court-martial, the Government may introduce from the accused's personnel record evidence of disciplinary actions including punishments under Article 15, UCMJ, 10 U.S.C. § 815. Article 36, UCMJ, 10 U.S.C. § 836; Rule for Courts–Martial (R.C.M.) 1001(b), Manual for Courts–Martial, United States, 1984; Manual of the Judge Advocate General (JAGMAN) § 0141 (formerly § 0133). However, other limitations upon the use of Article 15 nonjudicial punishments exist. Specifically, before a prior nonjudicial punishment may be introduced in the pre-sentencing proceedings, it must be shown on the record that the accused was informed of his right to confer with independent counsel before he accepted disposition of his charges by nonjudicial punishment and there was a valid personal, written waiver of the accused's right to demand trial by court-martial.[2] *United States v. Booker*, 5 M.J. 238, 243–44 (C.M.A.1977). However, if the record demonstrates that the accused was appropriately advised of his rights to consult with

---

1. I. THE MILITARY JUDGE ERRED BY ADMITTING A RECORD OF A NONJUDICIAL PUNISHMENT WHEN APPELLANT HAD NOTIFIED HIS COMMAND THAT HE WAS EXERCISING HIS RIGHT TO REFUSE TO ACCEPT THAT NONJUDICIAL PUNISHMENT.
   II. THE STAFF JUDGE ADVOCATE FAILED TO SERVE HIS RECOMMENDATION ON APPELLANT'S TRIAL DEFENSE COUNSEL AS REQUIRED BY R.C.M. 1106(F)(1). [Footnote omitted]
   III. THE CONVENING AUTHORITY FAILED TO PLACE INTO THE RECORD OF TRIAL ANY DOCUMENTS RELATING TO

THE RELIEF OF THE TRIAL DEFENSE COUNSEL AND THE APPOINTMENT OF SUCCESSOR COUNSEL AS REQUIRED BY JAGINST 5810.2, PARAGRAPH (6)(C). *SEE, UNITED STATES V. PALENIUS*, 2 M.J. 86 (C.M.A.1977). [Footnote omitted].

2. This requirement does not apply to the accused who was attached to or embarked in a vessel at the time his nonjudicial punishment was imposed. The requirement also does not apply if the nonjudicial punishment is offered as a matter in rebuttal.

counsel and to refuse nonjudicial punishment, there exists a presumption of regularity as to the accused's elections respecting same, that is, it may be inferred the accused elected disposition by Article 15 proceedings, and the record of such a nonjudicial punishment may be admitted in presentencing proceedings in a subsequent court-martial. *United States v. Wheaton*, 18 M.J. 159 (C.M.A.1984); *United States v. Kuehl*, 11 M.J. 126 (C.M.A.1981); *United States v. Mack*, 9 M.J. 300 (C.M.A.1980). Failure to object to defects in the record of nonjudicial punishment or the supporting *Booker* advisement waives the objection on appeal in the absence of "plain error". *United States v. Dyke*, 16 M.J. 426 (C.M.A. 1983); *United States v. McLemore*, 10 M.J. 238 (C.M.A.1981); *United States v. Yarbough*, 30 M.J. 1292 (N.M.C.M.R.1990) (*en banc*), *aff'd*, 33 M.J. 122 (C.M.A.1991); R.C.M. 1001(b)(2); Mil.R.Evid. 103(a)(1), (d).

■■■ In the appellant's case, service record book entries. evidencing three prior nonjudicial punishments were introduced by the Government. All were accompanied by a *Booker* advisement, also in the form of service record book entries. The appellant's assignment of error concerns only one of the nonjudicial punishments. By entry dated 29 December 1989, the appellant received nonjudicial punishment for failing to obey a lawful order by having alcohol in his barracks room. According to the same entry, the appellant did not appeal the imposition of this punishment. Curiously, the applicable *Booker* advisement, dated 27 December 1989, reflects the appellant chose to exercise his right to refuse nonjudicial punishment. Trial defense counsel did not object to this entry. Instead, he fashioned a case in extenuation and mitigation around the theme that alcohol was the root of the appellant's problems. Under these facts, we must determine whether it was error to admit the nonjudicial punishment, and if so, whether the error in admitting the nonjudicial punishment constituted "plain error" and may, therefore, be asserted on appeal.

"Plain error" is without a fixed definition. "Plain error" has been described variously as error that is both obvious and substantial, that is particularly egregious, that seriously affects the fairness, integrity or public reputation of judicial proceedings, or that requires appellate intervention to prevent a miscarriage of justice, protect the reputation and integrity of the court, or to protect a fundamental right of the accused. The "plain error" rule will be invoked only in exceptional circumstances to avoid a miscarriage of justice. In determining whether or not there is "plain error," the record must be considered as a whole.

*United States v. Lowry*, 33 M.J. 1035, 1037–38 (N.M.C.M.R.1991) (citations and quotations omitted). Plain error must have a prejudicial impact, and a *per se* approach to plain error is flawed. *United States v. Rice*, 33 M.J. 451, 452 (C.M.A.1991); *United States v. Fisher*, 21 M.J. 327, 328–29 (C.M.A.1986) (citing *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)); *United States v. Ruiz*, 30 M.J. 867, 869 (N.M.C.M.R.1990).

In *Dyke*, the United States Court of Military Appeals held that the admission of a nonjudicial punishment was "plain error" in the absence of defense objection when the service record entries evidencing the nonjudicial punishment were unsigned. There the exhibit lacked signatures as to the advisement and election of rights, as well as the entry attesting the imposition of punishment. Judge Everett, speaking for the Court, observed:

Although the Military Rules of Evidence were intended to place additional responsibility upon trial and defense counsel, we do not believe that they meant to provide a license for slipshod performance by military judges. [The exhibit evidencing the nonjudicial punishment] was so incomplete on its face that the judge should have excluded it on his own motion.

16 M.J. at 427.[3]

If *Booker* means anything, it prohibits the admission of a record of nonjudicial

---

**3.** In an earlier case, the Court of Military Appeals had mandated reassessment of sentence

punishment over the express refusal of nonjudicial punishment by the accused. It is theoretically possible the appellant changed his mind and elected nonjudicial punishment. It is equally possible his election was overlooked. In any case, the documented refusal of nonjudicial punishment clearly deprives the proceedings of any presumption of regularity they might have otherwise have enjoyed under *Wheaton.* In short, the admission of the 29 December nonjudicial punishment was error. An error of this nature is obvious. Ordinarily it would constitute "plain error" and could be asserted on appeal in the absence of an objection at trial. However, we are reminded that "plain error" must have prejudicial impact and a *per se* plain error analysis is inappropriate. Instead, we must examine the record as a whole and determine the impact of the error. In doing so, we observe the nonjudicial punishment was for a relatively minor offense. The appellant chose not to appeal it. It appears to have supported trial defense counsel's theory. *See Negrone,* 9 M.J. at 172. The appellant, himself, in his unsworn statement alluded to his heavy drinking and its relationship to his loss of control. Record at 40. In addition, the confinement adjudged by the court was reduced to 90 days by the convening authority in accordance with the pretrial agreement. For these reasons, and considering the entire record *in this case,* we conclude the appellant was not prejudiced by the admission of *this* record of nonjudicial punishment, and the admission of same, therefore, did not constitute "plain error".

The balance of the appellant's assignments of error are also without merit. Accordingly, the findings and sentence as approved on review below are affirmed.

on the basis of the erroneous admission of a record of nonjudicial punishment in which the accused's election was indiscernible. However, it is not apparent from the decision whether an objection had been raised at trial. *United States v. Cross,* 10 M.J. 34 (C.M.A.1980). In another case, *United States v. Negrone,* 9 M.J. 171 (C.M.A.1980), Court of Military Appeals was confronted with a situation similar to the appellant's here. In *Negrone* the trial court had admitted a record of a nonjudicial punishment on which the appellant's election to demand trial in lieu of Article 15 proceedings was left blank. Apparently there was no objection to the exhibit at trial. Observing they could not discern from the record whether the defense counsel's action was for "tactical advantage," the Court remanded for reassessment. In doing so, the Court decided *Negrone* not on grounds of a *Booker* omission, but rather because the exhibit was incomplete and not prepared in accordance with regulations. 9 M.J. at 171 n. 4. Mil. R.Evid. 103(d) and its concepts of waiver and "plain error" were effective 1 September 1980. Exec.Order 12198, 3 C.F.R. 151 (1981). Understandably, neither *Cross* nor *Negrone* employs a "plain error" analysis.