UNITED STATES

v.

Danny R. KELLY, 587–21–9249 Fireman
Apprentice (E–2), U.S. Navy.

NMCM 94 00169.

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 1 May 1992.

Decided 3 Feb. 1995.

Maj R.K. Stutzel, USMC, Appellate Defense Counsel.

CDR Philip D. Cave, JAGC, USN, Appellate Defense Counsel.

LT Brian B. Rippel, JAGC, USNR, Appellate Government Counsel. ·

MOLLISON, Senior Judge:

The principal issue in this appeal from a special court-martial conviction is whether restrictions on admitting records of prior nonjudicial punishments and summary courts-martial during the presentencing procedure of a subsequent court-martial, as stated in *United States v. Booker,* 5 M.J. 238 (C.M.A.1977), should continue to be applied in light of *Nichols v. United States,* —— U.S. ——, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). We conclude they should not. Accordingly, we affirm the appellant's conviction and sentence.

I.

Consistent with his pleas, the appellant was convicted of two unauthorized absences. Article 86, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 886 (1988). A military judge sentenced the appellant to confinement for 60 days, forfeiture of $250.00 pay per month for 3 months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence without modification. UCMJ art. 60, 10 U.S.C. § 860 (1988).

The appellant's case is before this Court for review in accordance with Article 66,

UCMJ, 10 U.S.C. § 866 (1988). We may affirm such findings of guilty and such part of the sentence as we find correct in law and fact and determine on the basis of the entire record should be approved. UCMJ art. 66(c). We may hold a finding or sentence incorrect on an error of law only if the error materially prejudices the substantial rights of the appellant. UCMJ art. 59(a), 10 U.S.C. § 859(a) (1988).

The appellant assigned three errors.[1] The first and third assignments of error lack merit and require no discussion. *United States v. Jenkins*, 38 M.J. 287 (C.M.A.1993). The appellant's second assignment of error concerns evidence of a prior summary court-martial admitted during the presentencing procedure in this case. That assignment of error requires further discussion.

In *United States v. Booker*, a divided Court of Military Appeals held that before a record of a prior nonjudicial punishment or a summary court-martial could be admitted against an accused to enhance [2] the sentence at a subsequent court-martial, the prosecution must show that:

(1) the accused had been advised of a right to consult with independent counsel before

opting for nonjudicial punishment or trial by summary court-martial, and

(2) the accused affirmatively and personally waived in writing his right to object to disposition by nonjudicial punishment or summary court-martial.[3] 5 M.J. at 243–44.

During the presentencing procedure in the appellant's court-martial, trial counsel offered Prosecution Exhibit 5, a service record entry evidencing a previous summary court-martial at which the appellant was awarded reduction in pay grade and forfeiture of pay based on four offenses of unauthorized absence and one offense of missing ship's movement.[4] UCMJ arts. 86, 87, 10 U.S.C. §§ 886, 887 (1988). Trial counsel offered no evidence of a *Booker* advisement or of a waiver of objection to trial by summary court-martial. Defense counsel objected to Prosecution Exhibit 5 on grounds there was "no evidence that the accused at that time was advised of his right to either consult with counsel or to be represented by counsel at a summary court-martial, and the court should not consider that as a prior conviction unless there is some evidence regarding advice of counsel."[5] Record at 39. The military judge overruled the objection and admitted Prosecution Exhibit 5 without comment. *Id.*

1.

I.
APPELLANT WAS DENIED A SPEEDY REVIEW OF HIS COURT–MARTIAL CONVICTION BECAUSE OF SUBSTANTIAL POST–TRIAL DELAY WHICH CAUSED HIM PREJUDICE.
II.
APPELLANT WAS SUBSTANTIALLY PREJUDICED WHEN THE MILITARY JUDGE ADMITTED PROSECUTION EXHIBIT 5 OVER DEFENSE OBJECTION.
III.
AN UNSUSPENDED BAD–CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE.

2. "Enhance" may mean either to increase or "escalate" the maximum authorized punishment, or to increase the sentence awarded within the maximum authorized punishment, in other words to "aggravate." Unless this opinion otherwise indicates, the term "enhance" means both "to escalate" and "to aggravate."

3. Additionally, before a prior summary court-martial could be used to "escalate" the maximum authorized punishment, it would have to be shown that the accused was represented by counsel at the summary court-martial or had executed

a valid waiver of the assistance of counsel. Otherwise, the prior summary court-martial could only be used as a matter in aggravation. 5 M.J. at 243–44.

4. The convening authority approved the sentence and ordered it executed; however, he suspended the forfeitures.

5. Defense counsel did not object on grounds there was no showing the appellant had been advised of his right to object to trial by summary court-martial. That objection was, therefore, waived. *See United States v. Elston*, 34 M.J. 1036, 1038 (N.M.C.M.R.1992) (citing cases). In this regard, we also note that standard records of summary courts-martial and non-judicial punishment set forth necessary advisements and elections. Record of Trial by Summary Court–Martial (DD Form 2329), Manual for Courts–Martial, United States, 1984, app. 15, A15–1; Report and Disposition of Offense(s) (NAVPERS Form 1626/7). Defense counsel did not object to the summary court-martial conviction on grounds it had not been shown that review had been completed. *See* Rule for Courts–Martial [R.C.M.] 1001(b)(3)(B). Likewise, that objection was waived. Mil.R.Evid. 103.

If *Booker* retains its vitality, the military judge erred. However, the United States Supreme Court has recently held in *Nichols v. United States*, that uncounseled, yet constitutionally firm, prior misdemeanor convictions may be used to enhance sentences in federal criminal trials and a cautionary advisement at the time of the prior conviction is not required. Therefore, we specified the following issue for briefing by the parties:

> WHETHER THE REQUIREMENTS OF *United States v. Booker*, 5 M.J. 238 (C.M.A.1977), CONTINUE TO APPLY IN TRIALS BY COURT–MARTIAL IN LIGHT OF *Nichols v. United States*, —— U.S. ——, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994)?

We also ordered the case be considered by this Court sitting as a whole in order to secure uniformity of decision and because the proceedings involved a question of exceptional importance. Courts of Military Review Rules of Practice and Procedure, Rule 17(a), 22 M.J. CXXXIII.

## II.

The Constitution empowers Congress "[t]o make Rules for the Government of the land and naval Forces." U.S. Const. art. I, § 8, cl. 14. Congress has exercised that authority by enacting the Uniform Code of Military Justice, 10 U.S.C. §§ 801–946 (1988 & Supp. IV 1992). In exercising its constitutional authority, Congress has established a comprehensive hierarchy of disciplinary proceedings, and it has apportioned disciplinary authority among a variety of officials and courts. It has authorized four proceedings at which disciplinary violations may be disposed. They are, from the least severe to the most severe: nonjudicial punishment, trial by summary court-martial, trial by special court-martial, and trial by general court-martial. UCMJ arts. 15–20, 10 U.S.C. §§ 815–820 (1988).

For minor and non-capital offenses, Congress has authorized the imposition of nonjudicial punishment and trial by summary courts-martial. UCMJ arts. 15, 20, 10 U.S.C. §§ 815, 820 (1988). Nonjudicial punishment is imposed by the servicemember's commanding officer and generally may not exceed 30 days correctional custody or 3 days' confinement on bread and water if the servicemember is attached to or embarked in a vessel. Nonjudicial punishment may not be imposed if the member demands trial by court-martial in lieu thereof, unless the member is attached to or embarked in a vessel. A servicemember may appeal the imposition of nonjudicial punishment to the next superior authority. The summary court-martial is a one-officer proceeding conducted by a commissioned officer who need not be a lawyer. The summary court may not award a punitive discharge or confinement for more than 1 month. No accused may be brought to trial by summary court-martial over the accused's objection. A summary court-martial is automatically reviewed by the authority who convened the court and by a judge advocate and may be reviewed by the Judge Advocate General. UCMJ arts. 60, 64, 69, 73, 10 U.S.C. §§ 860, 864, 869, 873 (1988 & Supp. IV 1992). No further right of appeal exists with respect to these two proceedings.

The special court-martial is the relative equivalent of the civilian misdemeanor court; the general court-martial is the relative equivalent of the civilian felony court. Special courts-martial are customarily presided over by a military judge, who must be a lawyer. A special court-martial may impose confinement up to 6 months and a bad-conduct discharge. General courts-martial must be presided over by a military judge. Depending upon the offense, a general court-martial may impose up to life imprisonment, a dishonorable discharge, and/or death. UCMJ arts. 16, 18, 19, 26, 10 U.S.C. §§ 816, 818, 819, 826 (1988). The sentence of any special or general court-martial is reviewed by the officer who convened the court. Depending on the sentence, the accused may appeal to the Judge Advocate General, this Court, the United States Court of Appeals for the Armed Forces, and the United States Supreme Court. Additionally, some sentences may not be executed until approved by the service Secretary concerned, or by the President. UCMJ arts. 60, 66–67a, 69, 71, 73, 10 U.S.C. §§ 860, 866–867a, 869, 871, 873 (1988 & Supp. IV 1992).

Congress has prescribed when counsel shall be detailed to represent servicemembers in military disciplinary proceedings. UCMJ arts. 27, 32, 38, 70, 72, 10 U.S.C. §§ 827, 832, 838, 870, 872 (1988). Under the Code, the accused is entitled to the assistance of counsel, without charge, at an Article 32 pretrial investigation, special and general courts-martial, and post-trial proceedings and appeals thereon. No provision in the Code requires counsel be detailed to represent an accused at nonjudicial punishment proceedings or summary courts-martial, grants an accused the right to consult with counsel before deciding whether to object to nonjudicial punishment or trial by summary court-martial, or sets conditions on the admissibility of prior nonjudicial punishments or summary courts-martial during the presentencing procedure in a subsequent court-martial.

Congress has delegated to the President and the Secretaries of the military departments the authority to promulgate supplemental regulations respecting nonjudicial punishment and summary courts-martial. UCMJ arts. 15(a), 20, 36(a), 10 U.S.C. §§ 815(a), 820, 836(a) (1988). The President has exercised that authority as to nonjudicial punishment by promulgating Part V of the Manual for Courts–Martial, United States, 1984 [MCM]. He has also exercised that authority as to trials by summary court-martial by promulgating Rules for Courts–Martial [R.C.M.] 1301 to 1306, set forth in Chapter XIII of Part II of the MCM.

Nothing in Part V of the MCM gives the servicemember a right to counsel in nonjudicial punishment proceedings. The "drafter's analysis" of Part V of the MCM states "that there is no right to consult with counsel before deciding whether to demand trial by court-martial," and "unless otherwise prescribed by the Secretary concerned, the decision whether to permit a member to consult with counsel is left to the commander." MCM, Part V, ¶ 4 analysis, app. 21, A21–108. Otherwise, Part V of the MCM provides that unless the servicemember is attached to or embarked in a vessel, the member must be notified of the right to demand trial by court-

martial in lieu of nonjudicial punishment, the right not to be tried by summary court-martial over the member's objection, and the right to be represented by counsel at a special or general court-martial. MCM, Part V, ¶ 4a(5). If the servicemember does not demand trial by court-martial in lieu of nonjudicial punishment within a reasonable time after such notice, the nonjudicial punishment hearing may proceed. MCM, Part V, ¶ 4b. The MCM further provides that if the servicemember requests personal appearance before the nonjudicial punishment authority, the servicemember in some cases is entitled to be accompanied by a spokesperson arranged for by the member. The spokesperson need not be a lawyer and is not entitled to travel or similar expenses. The proceedings need not be delayed to permit the presence of the spokesperson. MCM, Part V, ¶ 4c(1)(B).

The Secretary of the Navy has promulgated supplementary regulations on nonjudicial punishment. Manual of the Judge Advocate General of the Navy, Judge Advocate General Instruction 5800.7C of 3 Oct 1990 (Change 1 of 6 Aug 1992) [JAGMAN]. The regulation provides in part:

> *Legal rights.* Prior to the imposition of nonjudicial punishment, the commanding officer or officer in charge shall ensure that the individual concerned is fully advised of all applicable legal rights and that other required action is taken prior to the hearing.... There is no right for an accused to consult with counsel prior to nonjudicial punishment; however, commanding officers are encouraged to permit an accused to so consult subject to immediate availability of counsel, the delay involved, or operational commitments or military exigencies. Failure to provide the opportunity for an accused to consult with counsel prior to nonjudicial punishment does not preclude the imposition of nonjudicial punishment; it merely precludes the admissibility of the record of nonjudicial punishment in aggravation at a later court-martial (unless the accused was attached to or embarked in a vessel at the time of the

imposition of the nonjudicial punishment).[6] JAGMAN 0109a. The same regulation sets out the nature and extent of the advice to be provided by military lawyers under these circumstances, as well as a rights-waiver form. Such advice is limited to an explanation of the legal ramifications of refusing nonjudicial punishment. It does not equate to the establishment of an attorney-client relationship, which military lawyers are cautioned not to establish unless detailed by proper authority. JAGMAN 0109d(2).

The Rules for Courts–Martial expressly provide "[t]he accused at a summary court-martial does not have the right to counsel," however, if the accused has retained civilian counsel, "that counsel shall be permitted to represent the accused at the summary court-martial if such appearance will not unreasonably delay the proceedings and if military exigencies do not preclude it." R.C.M. 1301(e). The Rules also provide the accused must be informed of the right to object to trial by summary court-martial and must be given a reasonable period of time to decide whether to object. R.C.M. 1304.

Congress has also delegated to the President the authority to prescribe regulations respecting pretrial, trial, and post-trial procedures, including modes of proof. These regulations may not conflict with the Code but must, so far as the President considers practicable, apply principles of law and rules of evidence generally recognized in criminal trials in federal district courts. UCMJ art. 36(a), 10 U.S.C. § 836(a) (1988). The President has exercised that authority by promulgating the Rules for Courts–Martial and the Military Rules of Evidence. R.C.M. 1001 sets forth the courts-martial presentencing procedure. According to this rule, the prosecution may introduce evidence of disciplinary actions, including nonjudicial punishments. R.C.M. 1001(b)(2). It may also introduce military convictions, including summary court-martial convictions. Such convictions may be proven by any evidence admissible under the Military Rules of Evidence. R.C.M. 1001(b)(3). The Military Rules of

Evidence set forth no *Booker*-type requirements.

Finally, Congress has delegated to the President the authority to prescribe the maximum punishment for those offenses under the Code that are punishable as "a court-martial may direct." UCMJ art. 56, 10 U.S.C. § 856 (1988). The President has likewise exercised that authority in the Rules for Courts–Martial and Part IV of the MCM. He has prescribed sentence limitations for the various offenses, and he has prescribed circumstances under which the sentence may be enhanced (escalated) based upon the existence of previous courts-martial convictions. R.C.M. 1003(d)(1)–(2). A court-martial conviction includes for these purposes conviction by summary court-martial. R.C.M. 103(8)(E). None of the sentence enhancement provisions of the Rules for Court–Martial includes *Booker*-type requirements.

### III.

In 1973, in *United States v. Alderman*, 22 C.M.A. 298, 46 C.M.R. 298, 1973 WL 14505 (1973), a divided Court of Military Appeals held that evidence of two prior summary courts-martial convictions was erroneously admitted during the presentencing procedure to enhance the sentence because the accused was not represented by counsel at the summary courts-martial. It based its conclusion that the accused had a right to counsel at summary courts-martial on *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), in which the United States Supreme Court held that the Sixth Amendment to the Constitution requires an accused be provided the assistance of counsel in civilian misdemeanor prosecutions resulting in imprisonment. The Court of Military Appeals based its conclusion that an uncounseled summary court-martial conviction could not be admitted to enhance the sentence in a subsequent trial on *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), in which the Supreme Court also held that it was reversible error for a trial judge

---

**6.** This provision of the JAGMAN is not an independent limitation on the use of nonjudicial punishments. Rather, it is only informational. *Cf.*

*United States v. Harrell*, 5 M.J. 604, 607 (N.C.M.R.1978).

to consider, during sentencing, evidence of convictions that were constitutionally infirm.

In *Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), however, the Supreme Court settled the question of whether an accused servicemember is entitled to the assistance of counsel at a summary court-martial. There, the Supreme Court explicitly rejected *Alderman,* the application of *Argersinger* to summary courts-martial, and claims that the right to the assistance of counsel at summary courts-martial was required by either the Fifth or Sixth Amendments to the Constitution.[7] In doing so, it gave "particular deference to the determination of Congress, made under its authority to regulate the land and naval forces, U.S. Const. Art. I, § 8, that counsel should not be provided in summary courts-martial." 425 U.S. at 43, 96 S.Ct. at 1291–92.

*Henry* appeared to overrule *Alderman's* holding that a prior uncounseled summary court-martial conviction could not be introduced for sentence enhancement purposes; however, following *Henry,* the Court of Military Appeals granted a petition for review of this Court's decision in *Booker.* There, two prior uncounseled summary courts-martial had been admitted for sentence enhancement purposes. Notwithstanding *Henry,* Chief Judge Fletcher, writing for an again-divided Court of Military Appeals, set forth the *Booker* rule, stated above. 5 M.J. at 243–44. Thus, while the Court retreated from *Alderman's* holding that an accused is entitled to the assistance of counsel at a summary court-martial, it fashioned a somewhat different right, viz, the right to confer with independent counsel before opting for nonjudicial punishment or trial by summary court-martial. It also held in *Booker* that in the absence of an advisement of this right to confer, a nonjudicial punishment or summary court-martial could not be admitted at a subsequent trial. The Court based these new procedural requirements upon the Fifth Amendment, the Sixth Amendment, and again on *Argersinger.* 5 M.J. at 243. In particular, Chief Judge Fletcher opined that

"[i]t is in order to give some meaning to the due process guarantees of the Fifth Amendment that we must provide limitations on the utilization of evidence of the imposition of discipline at a summary court-martial in a subsequent trial." *Id.*

The *Booker* decision engendered criticism. See *United States v. Nordstrom,* 5 M.J. 528, 535 (N.C.M.R.1978) (Baum, J., concurring). That criticism persists today. See *United States v. Lawer,* 41 M.J. 751 (C.G.Ct.Crim. App.1995) (Baum, C.J.) (questioning *Booker* in light of *Nichols* ); *United States v. Heath,* 39 M.J. 1101, 1103–04 (C.G.C.M.R.1994) (Baum, C.J.). Nonetheless, the armed forces have made wholesale changes in processing nonjudicial punishments and summary courts-martial to meet the requirements of *Booker,* and this Court has endeavored to apply the *Booker* rule. *See generally United States v. Elston,* 34 M.J. 1036 (N.M.C.M.R. 1992).

## IV.

Since *Booker* was decided, most appellate activity has been devoted to limiting its application. For example, the Court of Military Appeals reconsidered *Booker* and vacated that part of the decision that purported to limit the jurisdiction of summary courts-martial " 'solely ... [to] minor military offenses unknown in the civilian society,' " something the Court acknowledged had been incorrectly stated in its original decision. *United States v. Booker,* 5 M.J. 246, 248 (C.M.A.1978) (quoting *Booker,* 5 M.J. 238 at 242). The Court also held that *Booker* did not apply to summary courts and nonjudicial punishments prior to the date of the decision, October 17, 1977. *United States v. Cannon,* 5 M.J. 198 (C.M.A.1978) (per curiam); *see also United States v. Syro,* 7 M.J. 431 (C.M.A.1979).

Next, in *United States v. Mathews,* 6 M.J. 357 (C.M.A.1979) (per Fletcher, C.J. with Cook & Perry, JJ., separately concurring in the result), the Court concluded that if the record of nonjudicial punishment offered in

---

7. The Supreme Court considered the military context of the proceedings; the limited nature of the penalties that may be imposed; the non-adversarial, informal nature of the proceedings; and the accused's right to refuse trial by summary court-martial and proceed to trial by special court-martial at which he may have counsel.

aggravation did not reflect a waiver of counsel and the right to demand trial, the military judge had the obligation to conduct an inquiry on the record to supply the missing information, but the military judge could conduct an inquiry of the accused for this purpose. The portion of *Mathews* authorizing examination of the accused, however, was later discarded in *United States v. Sauer*, 15 M.J. 113 (C.M.A.1983).

In *United States v. Mack*, 9 M.J. 300 (C.M.A.1980), a majority of the Court retreated from the requirements for proof of *Booker* compliance. There, an Army record of nonjudicial punishment met most of the *Booker* requirements, however, it did not reflect whether the accused had actually consulted with a lawyer or waived consultation. Faced with these circumstances, the Court held the military judge could engage in a presumption of regularity and admit the record. Chief Judge Everett devoted the balance of his lead opinion to an extensive reexamination of the basis for the *Booker* rule. He suggested that insofar as the rule prevents the use of records of uncounseled summary courts-martial for sentence enhancement purposes, such might be based on the then-recent decision in *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), in which the Supreme Court held that an uncounseled misdemeanor civilian conviction could not be used to enhance a sentence even though the prior conviction was constitutionally valid. *Mack*, 9 M.J. at 313.

On the question of the admissibility of uncounseled nonjudicial punishments, Chief Judge Everett observed in *Mack* that there was no constitutional basis for the *Booker* requirement, however, it could best be justified as "a practical means" of implementing the congressionally granted right to decline nonjudicial punishment, just as the Supreme Court had utilized a right of consultation with counsel as a means of implementing the Fifth Amendment privilege against self-incrimination for persons subject to custodial interrogation. 9 M.J. at 320 (citing *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). He also observed that

"service regulations now grant to many accused persons a right or an opportunity to consult counsel," and such regulations stemmed in part from a memorandum issued by Secretary of Defense Laird in 1973.[8] 9 M.J. at 320–21. He reasoned that "[t]o the extent that military directives call for counsel to be made available to accused persons in connection with nonjudicial punishment, *Booker* helps enforce those directives." *Id.* at 321. Finally, he observed:

Indeed, if we were writing now on a completely clean slate, it might be suitable simply to overrule *United States v. Booker*, as the Government has repeatedly requested and hold that, since an accused has neither a constitutional nor a statutory right to consult counsel or to be represented by counsel in connection with impending nonjudicial punishment, a record of nonjudicial punishment need contain no reference to consultation with counsel. However, at this point it seems unwise to turn back the clock. This is all the more true since consultation with counsel allows a better informed exercise of an accused's right to refuse nonjudicial punishment and also since the Department of Defense— apparently in response to various complaints—committed itself several years ago to a policy of providing an opportunity for accused persons to consult counsel in connection with proceedings under Article 15.

*Id.* at 323. Judge Cook, the lone dissenter in *Booker*, concurred in the disposition of *Mack*, but took exception to the application of *Baldasar*. Chief Judge Fletcher, the author of *Booker*, dissented.

In *United States v. Hayes*, 9 M.J. 331 (C.M.A.1980), decided the same day as *Mack*, Chief Judge Everett, with Judge Cook concurring, held that a Navy record of nonjudicial punishment met the requirements of *Booker*. Chief Judge Everett reiterated that the accused had neither a constitutional nor statutory right to consult with counsel in connection with nonjudicial punishment. 9 M.J. at 332. He also again took notice of the aforementioned DoD policy memorandum as well as the fact that the accused had not

8. He also observed in a footnote that the General Accounting Office had made recommendations

consistent with the *Booker* rule. 9 M.J. at 312–13 n. 14.

objected at trial to the admission of the record. *Id.* at 332–33.

Next, in *United States v. McLemore,* 10 M.J. 238 (C.M.A.1981) (per curiam with Fletcher, J., dissenting), the Court of Military Appeals held that an accused's failure to object to a service record entry of a nonjudicial punishment, introduced without proof of the accused's election to refuse or accept nonjudicial punishment, waived the issue on appeal.

Then, in *United States v. Kuehl,* 11 M.J. 126 (C.M.A.1981) (per curiam with Fletcher, J., dissenting in part), the Court of Military Appeals further retreated from *Booker* when it held that the military judge did not err in admitting over defense objection a record of a prior summary court-martial when the record showed the accused had been advised of his right to consult with counsel, but did not indicate whether he had actually consulted or had waived consultation.

The last Court of Military Appeals decision that appears to have accepted *Booker* as a working rule of military law was decided 11 years ago. *United States v. Alsup,* 17 M.J. 166 (C.M.A.1984). There, the Court held that a record of a prior summary court-martial was admissible when the accused was advised he had a right to be represented by appointed counsel at the summary court-martial but had not been advised of his right to consult with counsel before deciding whether to object to trial by summary court.

## V.

■ An objective examination of the *Booker* issue would suggest there is no constitutional, statutory, or regulatory right to the assistance of counsel at nonjudicial punishment proceedings or summary courts-martial, no right to confer with counsel before deciding whether to opt for such proceedings, and no right to be advised of any of the foregoing as a prerequisite to the admission of same at a subsequent trial. However, the principles of *stare decisis* apply in cases reviewed by military courts of criminal appeals, and we are bound to follow precedent established by our senior Courts. *United States v. White,* 39 M.J. 796 (N.M.C.M.R.1994). Accordingly, we are not generally free to ignore the precedent established by the Court of Military Appeals (now the United States Court of Appeals for the Armed Forces) or the United States Supreme Court. *United States v. Jones,* 23 M.J. 301 (C.M.A.1987); *White.*

But, as with all American jurisprudence, military law is ever changing, and we, as the junior appellate court, believe our senior Courts expect us to remain vigilant to developments in constitutional and criminal law to ensure military law remains current. Accordingly, we believe the Court of Appeals for the Armed Forces "does not intend us to be bound by a case decision mindless of the impact that subsequent developments in the law may have upon it." [9] *United States v. Martindale,* 36 M.J. 870, 878 n. 5 (N.M.C.M.R.1993), *aff'd,* 40 M.J. 348 (C.M.A.), *cert. denied,* —— U.S. ——, 115 S.Ct. 907, 130 L.Ed.2d 789. (1995). In all events, any departure, real or perceived, from the decision of our next senior Court must be fully justified.[10] Accordingly, we

---

9. A panel of the Army Court of Military Review (now the Army Court of Criminal Appeals) has expressed a different point of view. It believes that it must "defer to the precedents set by the [United States Court of Appeals for the Armed Forces] even where there is a likelihood that the Supreme Court may have rendered those precedents obsolete." *United States v. Dumas,* 36 M.J. 941, 943 (A.C.M.R.1993).

10. We have previously recognized the heavy burden we bear in this regard. For example, in *United States v. Littles,* 35 M.J. 644 (N.M.C.M.R. 1992), we departed from the "fairly embraced" approach for determining the existence of a lesser-included offense established by the Court of Military Appeals in *United States v. Baker,* 14 M.J. 361 (C.M.A.1983). We justified the departure from *Baker* on the basis of the Supreme Court decision in *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), which interpreted Federal Rule of Criminal Procedure 31(c) and applied a strict "elements test." We were aided in this departure from *Baker* by dicta in *United States v. Carter,* 30 M.J. 179 (C.M.A.1990), in which the Court of Military Appeals observed that the *Baker/*"fairly embraced" approach for determining a lesser-included offense had become "increasingly suspect." 30 M.J. at 181 (citing *Schmuck v. United States* ). After *Littles,* the Court of Military Appeals abandoned *Baker,* noting it did not survive the Supreme Court's decision in *Schmuck v. United States. United States v. Teters,* 37 M.J.

must: (1) carefully consider the basis for the questioned precedent (e.g., the Constitution, statutes, or regulations); (2) we must clearly articulate a change in circumstances warranting departure (e.g., a recent decision of the United States Supreme Court re-interpreting a principle of constitutional law upon which the questioned precedent was based); and (3) though we do not pretend to be clairvoyant, we must apply the law in accordance what we believe our senior Courts would now hold, given a change in circumstances.

## VI.

As noted above, the *Booker* issue has been highly contentious. Most decisions subsequent to *Booker* have retreated in some way from it. There does not appear to have been agreement as to the legal basis for the *Booker* rule, and the basis for the rule, like the rule itself, has also changed. Such factors alone might suggest the appropriateness of reexamination after the passage of some time. In any case, we believe that the former judges of the Court of Military Appeals based their decision on principles of Fifth and Sixth Amendment constitutional law, *Argersinger*, and *Baldasar.* See *Booker*, 5 M.J. at 243 & n. 20; *Booker*, 5 M.J. at 248 (Fletch-

er, C.J., dissenting upon reconsideration); *Syro*, 7 M.J. at 433; *Mack*, 9 M.J. at 326–28. Insofar as nonjudicial punishments are concerned, former Chief Judge Everett may have based his adherence to *Booker* on the aforementioned DoD policy.

Since *Booker*, the Supreme Court has expressed reservations about mechanically applying its constitutional law holdings on a civilian's right to counsel to the military, *see Davis v. United States*, —— U.S. ——, —— n. *, 114 S.Ct. 2350, 2354 n. *, 129 L.Ed.2d 362 (1994), and it has recently reiterated that while the Due Process Clause provides some measure of protection to defendants in military proceedings, particular deference must be given to Congress' determination as to what process is due. *Weiss v. United States*, —— U.S. ——, ——, 114 S.Ct. 752, 760, 127 L.Ed.2d 1 (1994).

[T]he tests and limitations [of due process] may differ because of the military context. The difference arises from the fact that the Constitution contemplates that Congress has plenary control over rights, duties, and responsibilities in the framework of the Military Establishment, including regulations, procedures, and remedies related to military discipline. Judicial deference thus

370 (C.M.A.1993), *cert. denied sub nom. Toro v. United States*, —— U.S. ——, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994).

In *Martindale*, we departed from *United States v. Hines*, 23 M.J. 125 (C.M.A.1986), in which the Court of Military Appeals found no harm in holding the requirements of the Confrontation Clause and residual hearsay exception to be the same. When *Hines* was decided, corroboration could be used both to satisfy the Confrontation Clause and other requirements under the residual hearsay rule. Since *Hines*, however, the Supreme Court had decided *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), holding that corroboration could not be used as an "indicia of reliability" to justify obviation of confrontation. *Id.* at 822–23, 110 S.Ct. at 3150–51. Following *Wright*, there then existed a real harm in mechanically applying the constitutional rule to the foundational requirements of the rule of evidence. For example, if the rule of evidence remained "constitutionalized," the Confrontation Clause could be independently satisfied by producing the witness, but an out-of-court statement of the witness could not be admitted under the rule of evidence because corroborating evidence vouching for the trustworthiness could not be considered. We believed that this new develop-

ment in constitutional law, as well as subsequent expressions of doubt by the author of *Hines* as to its continuing validity in this respect, justified a departure from the *Hines* precedent. *Martindale*, 36 M.J. at 878 n. 5. *Martindale* was subsequently affirmed by the Court of Military Appeals. 40 M.J. 348 (C.M.A.1994).

Finally, in *United States v. Kossman*, 37 M.J. 639 (N.M.C.M.R.), *rev'd*, 38 M.J. 258 (C.M.A. 1993), we considered whether we were yet bound by the 90–day speedy trial rule established by the Court of Military Appeals in *United States v. Burton*, 21 C.M.A. 112, 44 C.M.R. 166, 1971 WL 12477 (1971). The Government urged us to disregard this precedent in light of the new Rule for Court–Martial 707. The *Burton* rule was founded on an interpretation of Article 10, UCMJ, 10 U.S.C. § 810 (1988). The statute had not been amended. Our previous attempts to depart from the *Burton* rule had been rebuffed, and nothing in the new R.C.M. 707 expressed any intent to supplant the *Burton* rule. Accordingly, we concluded that it was up to the Court of Military Appeals to abrogate the rule, and until then, we were obliged to follow it. 37 M.J. at 642 (Mollison, J., concurring). Subsequently, the Court of Military Appeals abrogated the *Burton* rule. *United States v. Kossman*, 38 M.J. at 261 (C.M.A.1993).

is at its apogee when reviewing congressional decisionmaking in this area. Our deference extends to rules relating to the rights of servicemembers: Congress has primary responsibility for the delicate task of balancing the rights of servicemen against the needs of the military.... [W]e have adhered to this principle of deference in a variety of contexts where, as here, the constitutional rights of servicemen were implicated.

*Id.* at ———, 114 S.Ct. at 760–61 (citations and quotations omitted). The Court of Military Appeals has, itself, recently echoed the *Weiss* rule of deference, as well as a policy of deference to military regulations promulgated in accordance with congressional direction. *United States v. Mitchell,* 39 M.J. 131 (C.M.A.), *cert. denied,* — U.S. ——, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994) (citing *Weiss; Goldman v. Weinberger,* 475 U.S. 503, 507–08, 106 S.Ct. 1310, 1313–14, 89 L.Ed.2d 478 (1986)). More significantly, since the Court of Military Appeals relied upon constitutional law, *Argersinger,* and *Baldasar,* the Supreme Court decision of *Nichols,* decided June 6, 1994, is particularly germane.[11]

In *Nichols,* the defendant pled guilty to conspiracy to possess cocaine with intent to distribute. Under federal sentencing guidelines, the defendant's sentencing range was increased based upon a prior, uncounseled state misdemeanor conviction for driving under the influence for which the defendant was fined, but not imprisoned. The defendant objected to the increase on the basis of *Baldasar.* The Supreme Court took the opportunity to revisit *Baldasar* and its fractionated holding. As a consequence, it expressly overruled *Baldasar* and held that a uncounseled misdemeanor conviction, that was constitutionally valid because imprisonment had not been awarded, could be used to enhance the sentence in a subsequent trial for another crime. The Court also explicitly rejected the defendant's contention that minimum due process required the defendant be warned that his misdemeanor conviction might be used for enhancement purposes should the defendant later be convicted of another crime. — U.S. at ——, 114 S.Ct. at 1928. Simply put, *Nichols* means that if a prior conviction is constitutional, its use in subsequent sentencing proceedings is constitutional without a special advisement.

Insofar as the *Booker* rule was based on the Fifth Amendment, Sixth Amendment, *Argersinger,* and *Baldasar,* it has been undermined by the more recent decisions of *Weiss, Davis,* and *Nichols.* Insofar as the *Booker* rule, as applied to nonjudicial punishments, may have come to rest in part upon a 1973 DoD policy memorandum, we recall that the Court of Military Appeals has observed since *Booker* that *"policy* typically is not *law." United States v. Sloan,* 35 M.J. 4, 9 (C.M.A.1992); *see also United States v. Garwood,* 20 M.J. 148, 153–54 (C.M.A.), *cert.*

11. In *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Supreme Court held an indigent defendant in a state capital case had the right to the assistance of counsel, and the trial court's failure to afford a defendant a reasonable time and opportunity to secure counsel constituted a denial of due process. In *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the Supreme Court held an indigent defendant had the right to the assistance of counsel in non-capital federal cases. In *Gideon v. Wainright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Supreme Court held that an indigent defendant had the right to the assistance of counsel in a state or federal felony trial. In *Burgett v. Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967), the Supreme Court held that a state felony conviction could not be used "to support guilt or enhance punishment for another offense" when the prior conviction was obtained in violation of *Gideon* and the Sixth Amendment. In *United States v. Tucker,* the Su-

preme Court held that an uncounseled state felony conviction, invalid under *Gideon,* could not be used to enhance the sentence in a subsequent trial for another crime. In *Argersinger,* the Supreme Court held that no person may be imprisoned for any offense, including a misdemeanor, unless he was represented by counsel. In *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), the Supreme Court clarified *Argersinger* by explaining that the right to the assistance of counsel did not apply unless the defendant was actually imprisoned. Finally, in *Baldasar,* a fragmented Supreme Court held that a prior uncounseled misdemeanor conviction, though constitutionally valid under *Scott* because the defendant was not imprisoned, could not be used to enhance punishment in a subsequent trial for another crime. *See generally Custis v. United States,* — U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994); *Mack, passim.* Confusion in the lower courts followed.

*denied,* 474 U.S. 1005, 106 S.Ct. 524, 88 L.Ed.2d 456 (1985). More importantly, we note that no such policy has been implemented by the President as a part of the MCM. In fact, the "drafter's analysis" to the MCM states that the current nonjudicial punishment procedure meets the policy concerns of former-Secretary Laird and that there is no right to consult with counsel before deciding whether to demand trial by court-martial. MCM, app. 21, A21–108. Additionally, such a right to counsel has not been granted by the Secretary of the Navy. JAGMAN 0109; *see also United States v. Harrell,* 5 M.J. 604, 607 (N.C.M.R.1978).

### VII.

The clear teaching of *Weiss* and other Supreme Court cases is that interpretations of the Constitution rendered in the civilian context will not be applied mechanically to the military, and the greatest deference must be given in these matters to Congress and to the President to whom Congress has delegated the authority to establish procedural rules, rules of evidence, and sentencing criteria for trials by courts-martial. The allocation of legal resources within the military is the prerogative of Congress and the President. Congress and the President have determined with deliberation and precision at which disciplinary proceedings servicemembers will be afforded the assistance of counsel and at which they will not. Such inclusions and exclusions are presumptively intentional. *Cf. Custis v. United States,* —— U.S. ——, ——, 114 S.Ct. 1732, 1736, 128 L.Ed.2d 517 (1994).

Neither Congress nor the President has provided for the assistance of counsel at or before nonjudicial punishment proceedings or summary courts-martial. The President has expressly stated that an accused will not be afforded the assistance of counsel in trials by summary court-martial. The President has made no provision for the assistance of counsel in nonjudicial punishment proceedings, and such cannot be interpreted as an oversight. *Cf. Custis.*

Similarly, the President has exercised his statutory authority in prescribing maximum authorized punishments and the presentenc-

ing procedures. He has authorized the consideration of prior nonjudicial punishments and summary courts-martial for these purposes, and neither he nor Congress has otherwise conditioned the admission of these records upon prior consultation with counsel. In short, Congress and the President have acted within their constitutional prerogatives—prerogatives which we are required to respect. *See United States v. Wesley,* 19 M.J. 534, 540–41 (N.M.C.M.R.1984).

■ If the *Argersinger* line of civilian cases is yet to be applied to this issue, *Nichols* now instructs that an uncounseled, but constitutionally valid conviction (which under *Henry* includes summary courts-martial whether or not confinement was awarded) may be used to enhance the sentence in a subsequent trial without any further advisement respecting counsel. *A fortiori,* the same would apply to nonjudicial punishments.

Finally, we note that in his brief the appellant suggests that *Booker* was based on the ubiquitous "military due process." We have found no case in which the Court of Military Appeals explicitly based the *Booker* decision on "military due process." Nonetheless, it is true that the term "military due process" has appeared, and continues to appear, in the opinions of military appellate tribunals. *United States v. Clay,* 1 C.M.A. 74, 77, 1 C.M.R. 74, 77, 1951 WL 1512 (1951); *United States v. Lemaster,* 40 M.J. 178, 181 (C.M.A. 1994).

■ The sources of military law include the Constitution, international law, the statutes governing the military establishment and regulations issued thereunder. MCM pmbl., Part I, ¶¶ 1, 3. "Military due process" is not a source of military law, nor is it a natural or common law concept. *Cf. Wesley,* 19 M.J. at 540–41. Rather, it was coined by the early Court of Military Appeals to describe a pattern of rights granted by Congress to servicemembers and as a means to determine when the abrogation of those rights warranted a remedy:

[W]e *look to the acts of Congress* to determine whether it has declared that there are fundamental rights inherent in the trial

of military offenses which must be accorded to an accused before it can be said that he has been fairly convicted.

There are certain standards in the military accusatorial system which have been specifically *set by Congress* and which we must demand be observed in the trials of military offenses. Some of these are more important than others, but all are of sufficient importance to be a significant part of military law. We conceive these rights to mold into a pattern similar to that developed in federal civilian cases. For lack of a more descriptive phrase, we label the pattern as "military due process" and then point up the minimum standards which are the framework for this concept and which must be met before the accused can be legally convicted. The Uniform Code of Military Justice contemplates that he be given a fair trial and it commands us to see that the proceedings in the courts below reach that standard.

Generally speaking, due process means a course of legal proceedings according to those rules and principles which have been established in our system of jurisprudence for the enforcement and protection of private rights. For our purposes, and in keeping with the principles of military justice developed over the years, we do not bottom those rights and privileges on the Constitution. We base them on the *laws as enacted by Congress.* But, this does not mean that we can not give the same legal effect to the rights granted by Congress to military personnel as do civilian courts to those granted to civilians by the Constitution or by other federal statutes.

As we have stated in previous opinions, we believe Congress intended, in so far as reasonably possible, to place military justice on the same plane as civilian justice, and to free those accused by the military from certain vices which infested the old system. Believing this, we are required to announce principles consistent therewith.

. . . .

. . . Under our powers as an appellate court we can reverse for errors of law which materially prejudice the substantial rights of the accused, and we need go no further than to hold that the failure to afford to an accused any of the enumerated rights [provided in the UCMJ] denied him military due process and furnishes grounds for us to set aside the conviction. *Clay,* 1 C.M.A. at 77–78, 1 C.M.R. at 77–78 (emphasis added). "It is self-evident from the foregoing language that the threshold requisites to the application of the concept of 'military due process' are the existence of an act of Congress which grants a fundamental right to a military accused and the denial of that right in the course of a court-martial proceeding." *United States v. Jerasi,* 20 M.J. 719, 723 (N.M.C.M.R.1985), *aff'd,* 23 M.J. 162 (C.M.A.1986). "Military due process" has also been employed to connote outrageous government conduct that gives rise to the functional equivalent of a recognized defense. *Lemaster; cf. United States v. Wooten,* 34 M.J. 141, 148 (C.M.A.1992).

Inasmuch as "military due process" requires the creation of a right by an act of Congress, the term "military due process" cannot be used to explain *Booker.* Congress has not granted a right of representation or consultation respecting nonjudicial punishments or summary courts-martial, nor has it conditioned their use in the pre-sentencing procedure. The *Booker* rule is not consistent with the statutory pattern of rights Congress and the President have fashioned. The *Booker* rule is also not now consistent with the rule in federal civilian courts. Finally, we note that the failure to give a *Booker* advisement is not outrageous government conduct.

The Court of Military Appeals did not base the *Booker* rule on "military due process." Instead, it based the rule on principles of constitutional law, as it then interpreted them. Seventeen years later, those principles have been clarified by the Supreme Court. Armed with that clarification, we are of the view a different rule must now be applied.

We express no view as to whether it is good policy or bad policy to mandate a right to confer with counsel before nonjudicial punishment proceedings or summary courts-martial. We do not make policy. That prerogative belongs to others. It is our obli-

gation to carry out our statutory charge. UCMJ arts. 59, 66, 10 U.S.C. §§ 859, 866 (1988). Based on the foregoing, we have concluded that a reexamination of *Booker* is timely and appropriate, and upon such reexamination we have found no basis in law upon which to continue to apply the *Booker* rule. Accordingly, we conclude that the military judge's admission of the summary court-martial in appellant's case was not in error. For the reasons noted above, we also believe the United States Court of Appeals for the Armed Forces would now be of the same view.

## VIII.

The findings and sentence as approved on review below are affirmed.

Senior Judges WELCH, ORR and REED and Judges KEATING, McLAUGHLIN and CLARK concur.

DeCICCO, Judge, joined by LARSON, Chief Judge (dissenting in part):

While I agree with the majority in affirming the findings and in concluding that *Nichols v. United States*, —— U.S. ——, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) indicates that it is time for *United States v. Booker*, 5 M.J. 238 (C.M.A.1977), *modified on reconsideration*, 5 M.J. 246 (C.M.A.1978) to be overruled, I must part company with them in affirming the sentence in this case as long as *Booker* remains the binding precedent of our superior court. Until *Booker* is overruled by the U.S. Court of Appeals for the Armed Forces, we, as an intermediate appellate court, should hold that the military judge erred in admitting Prosecution Exhibit 5 over defense objection.

A Court of Military Review (now a Court of Criminal Appeals) is not generally free to ignore the precedent established by the United States Court of Military Appeals (now the United States Court of Appeals for the Armed Forces). *United States v. Jones*, 23 M.J. 301, 302 (C.M.A.1987). The reason for this rule is simple: to prevent chaos and confusion within the military justice system. Unless expressly overruled by the U.S. Supreme Court, the holdings of the Court of

Appeals for the Armed Forces must be followed by the Courts of Criminal Appeals no matter how obsolete the judges of the Courts of Criminal Appeals think those holdings to be. *Cf. Hutto v. Davis*, 454 U.S. 370, 375, 102 S.Ct. 703, 706, 70 L.Ed.2d 556 (1982); *United States v. Dumas*, 36 M.J. 941, 943 (A.C.M.R.1993). The orderly administration of justice and the interests of consistency among the services are not well-served when one of the Courts of Criminal Appeals announces it is no longer bound by existing precedent of the Court of Appeals. In this case, it could result in disparity of treatment among service personnel during sentencing proceedings based solely on the uniform worn by the accused. Naval personnel would no longer possess the procedural protections afforded by *Booker* whereas personnel serving in the Army, Air Force and Coast Guard would.

Although limited and criticized, *Booker* has not been expressly overruled by the Court of Appeals or the Supreme Court. The proper course for us to take in this case is to follow *Booker* while acknowledging *Nichols*, and to express our view that it is time for the Court of Appeals to overrule *Booker*. In other words, while bound by *Booker*, we are not gagged by it. *See* B.E. WITKIN, MANUAL ON APPELLATE COURT OPINIONS § 91 at 168–69 (1977). Such an approach would avoid the risk of disparate treatment among military personnel until the Court of Appeals has an opportunity to consider the matter and issue an opinion.

This is exactly the course this court took in *United States v. Kossman*, 37 M.J. 639 (N.M.C.M.R.), *vacated*, 38 M.J. 258 (C.M.A. 1993) regarding whether we should decline to follow another decision of the Court of Military Appeals, *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166, 1971 WL 12471 (1971). In that case, the Court of Appeals eventually decided to overrule *Burton*, which it had the authority to do. 38 M.J. at 261. In another case, this Court decided a case contrary to existing precedent of the Court of Appeals when it was likely that Supreme Court precedent rendered it obsolete. *United States v. Martindale*, 36 M.J. 870 (N.M.C.M.R.1993), *aff'd*, 40 M.J. 348

(C.M.A.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 907, 130 L.Ed.2d 789. (1995). In *Martindale* the Court of Appeals remanded the case to us for consideration of the admission of an unsworn transcript of a victim under *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), a question involving the constitutional right of confrontation of witnesses.

I believe the restrained course we took in *Kossman* is the preferred course in this case, particularly where (1) the Court of Appeals has not indicated an intent to overrule *Booker* or make any recent statement that its holding is suspect, (2) the Court of Appeals has not remanded the case to us for consideration in light of *Nichols,* and (3) we are not confronted by a question of constitutional dimension decided by the Supreme Court. Both *Kossman* and this case only involve the review of court-created procedural rules which affect military practice alone.

Sound appellate practice requires us to adhere to the doctrine of *stare decisis.* The majority's action in declining to follow the binding precedent of our superior court represents a departure from this principle that I cannot join and which the Court of Appeals has cautioned us to avoid. *Jones.* For now, I would continue to follow *Booker,* find error in the sentencing hearing, reassess the sentence in light of the error, and suggest to the Court of Appeals that *Booker* be overruled in light of *Nichols.*