UNITED STATES, Appellee,

v.

Michael CARDREON, Torpedoman's
Mate Third Class, U.S. Navy,
Appellant.

No. 98–1118.
Crim.App. No. 97–0015.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 26, 1999.

Decided Dec. 9, 1999.

GIERKE, J., delivered the opinion of the
Court, in which CRAWFORD, C.J., SULLI-
VAN and EFFRON, JJ., and COX, S.J.,
joined.

For Appellant: *Lieutenant Junior Grade
M.E. Eversole*, JAGC, USNR (argued);
*Lieutenant Commander· L.J. Lofton*, JAGC,
USN.

For Appellee: *Lieutenant Russell J.E.
Verby*, JAGC, USNR (argued); *Colonel Kev-*

*in M. Sandkuhler*, USMC, *Commander Eugene E. Irvin*, JAGC, USN, and *Lieutenant James E. Grimes*, JAGC, USNR (on brief).

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of rape, forcible sodomy, unlawful entry, and adultery, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 920, 925, and 934, respectively. The adjudged and approved sentence provides for a dishonorable discharge, confinement for 10 years, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals set aside the conviction of adultery as multiplicious with the rape conviction, affirmed the remaining findings of guilty, reduced the confinement to 5 years, and otherwise affirmed the sentence.

This, Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ADMITTING A STATEMENT MADE BY THE VICTIM AFTER A MOTIVE TO FABRICATE AROSE, AS A PRIOR CONSISTENT STATEMENT, AND THEN INSTRUCTING THE MEMBERS THAT THEY COULD CONSIDER SUCH TESTIMONY [SIC] AS EVIDENCE FOR THE TRUTH OF THE MATTER ASSERTED THEREIN.

For the following reasons, we affirm the decision of the court below.

*Factual Background*

The granted issue pertains to evidence that, during the early morning of December 22, 1995, Torpedoman's Mate Second Class (TM2) K told Gunner's Mate (Missiles) Seaman (GMMSN) Smith that appellant had raped her. After appellant had entered pleas of not guilty to all charges and specifications and several pretrial motions had been litigated, the defense made the following oral motion *in limine* pertaining to opening statements:

I believe that [GMMSN] Smith will be testifying to matters which would encompass hearsay. They may be admissible as a prior consistent statement once there is a question about whether or not the complainant, in this case, has made any prior inconsistent statements; but, at this juncture of the proceedings without the defense even putting into evidence at all anything related to its case, it would be our position that anything [GMMSN] Smith might have to say about what [TM2 K] said would be hearsay at this point. It may become admissible later on in the trial, but for purposes of opening statement, there would be no basis upon which prosecution can state what [GMMSN] Smith said with respect to what [TM2 K] said.

I have no problem with the prosecution indicating that she called [GMMSN] Smith, that he went to her room immediately thereafter, or words to that effect. So long as the content of the conversations were not provided, because that would clearly be hearsay.

Trial counsel responded to the defense motion *in limine* as follows:

Sir, we do anticipate commenting on what the victim told [GMMSN] Smith that night. We believe that it is admissible hearsay at trial as it—we'll get into that at trial, if the objection is raised, but, this— we understand the standard is that the Government has a right during its opening statement to talk about evidence which [it] has a good faith basis to believe is going to be produced at trial and will be admissible at trial. We've got a good faith basis to believe it will be produced at trial and will be admissible at trial.

The military judge denied the motion *in limine*, telling the trial counsel, "I'll allow you to go into that in your opening statement."

During the prosecution case-in-chief, TM2 K testified that appellant and another sailor came to her barracks room between 8:00 p.m. and 8:30 p.m. on December 21, 1995. They had been drinking and wanted to "party."

GMMSN Smith was with TM2 K in her room when they arrived.

TM2 K testified that on December 21, GMMSN Smith was her "best friend." She also testified that they later became romantically involved and on Valentine's Day, February 14, 1996, they became engaged to be married.

When appellant came to TM2 K's room, he was drunk. He began "hitting" on her, telling her that he wanted to touch her and trying to touch her. She told him to stop.

Appellant and GMMSN Smith left TM2 K's room at between 10:00 p.m. and 10:30 p.m. Curfew was at 10:00 p.m. Appellant returned a few minutes later, and he told TM2 K that he did not want to drive because he had been drinking. TM2 K offered to let him sleep on the floor in her room. Appellant again said he wanted to touch her, and she again refused.

TM2 K testified that she did not want to be involved with appellant because he was married and because she was involved with appellant's friend, TM3 Hausmann. She testified that she "liked" Hausmann, but that on the evening of December 21, he was "mad" at her and she did not know why.

Appellant suggested that they talk to Hausmann. They went to his room and awakened him, and TM2 K asked him why he was angry. He replied that they would discuss it later. TM2 K returned to her room, but appellant remained with Hausmann.

Appellant returned to TM2 K's room and offered to tell her what Hausmann had said. She let him into the room, and he again began talking about touching her. At that point, GMMSN Smith called and asked if appellant was still in the room. He told TM2 K to "kick him out or he was going to call security." According to TM2 K, appellant left but said he would return in 20 minutes and that TM2 K had "better open the door." TM2 K locked the door and went to bed.

TM2 K testified that she was awakened by appellant "nudging" her and calling her name. She told him to leave, and he refused. He pulled back the sheets, pulled down her shorts, forcibly sodomized her, and raped

her. She testified that she was crying and begging him to stop. She did not scream because she was frightened. She testified that she did not physically resist him with greater force because she had been molested when she was 8 years old, and appellant's forcible assault made her feel "like a little girl."

As soon as appellant left her room, TM2 K called GMMSN Smith. Smith came to her room immediately, and she told him that appellant had raped her. She testified that she did not report the rape to anyone in authority because she knew appellant was married and his wife would be upset and his children hurt. She also testified that she did not think that anyone would believe her. The defense did not object to any of TM2 K's testimony about her conversation with GMMSN Smith.

On cross-examination, the defense questioned TM2 K about allowing appellant to stay in her room for several hours and her willingness to allow appellant to spend the night on the floor of her room in spite of his intoxication and sexually aggressive behavior. She was questioned about appellant's ability to reenter her room after she locked the door and went to bed. Defense counsel questioned her about her relationship with GMMSN Smith and asked her whether GMMSN Smith was jealous or merely protective when he told her to kick appellant out of her room. She was questioned about her relationship with Hausmann. Finally, she was questioned about prior inconsistent statements and her failure to report the incident until February 29, after she and GMMSN Smith were engaged to be married.

GMMSN Smith testified that he and TM2 K were "good friends" on December 21, 1995. He testified that, during the early morning hours of December 22, she called him and asked him to come to her room. When he arrived, she was crying and shaking. She told him that appellant had raped her. The defense did not object to any of GMMSN Smith's testimony.

Appellant's version of the events was consistent with TM2 K's version, up to the point where GMMSN Smith told TM2 K to "kick

him out" of the room. Appellant testified that at that point, TM2 K asked him to leave the room but to return in 10–15 minutes. Appellant testified that he returned, was invited into the room, and that he and TM2 K then engaged in consensual oral sodomy and intercourse.

## Discussion

Appellant asserts that the military judge committed plain error by admitting TM2 K's testimony and GMMSN Smith's testimony about her statement that appellant raped her. Appellant argues that the evidence does not qualify as a prior consistent statement under Mil.R.Evid. 801(d)(1)(B), Manual for Courts–Martial, United States (1995 ed.), because it was made after TM2 K had a motive to fabricate (*see* 52 MJ at 11 n.*).

The Government asserts that appellant failed to preserve the issue by lodging a timely objection, and that admitting the testimony was not plain error. The Government argues that, because there was no objection, the analysis should not be confined to Mil.R.Evid. 801(d)(1)(B), but instead all theories of admissibility should be considered on appeal.

■ Mil.R.Evid. 103(a)(1) requires a timely objection to preserve an evidentiary issue for appellate review, unless the evidentiary ruling rises to the level of plain error. A motion *in limine* is not always sufficient to preserve an issue for appellate review absent further objection. In *United States v. Dollente*, 45 MJ 234, 240 (1996), this Court adopted the three-part test fashioned by the 10th Circuit in *United States v. Mejia–Alarcon*, 995 F.2d 982, 986–87 (1993), for determining when a motion *in limine* is sufficient to preserve an issue:

First we ask whether the matter was adequately presented to the district court.... Second we determine whether the issue is of the type that can be finally decided in a pretrial hearing .... [Finally] the district court's ruling must be definitive.

■ Applying this test, we hold that defense counsel's motion *in limine* did not preserve the issue. It did not satisfy the first prong, because it did not adequately present

the issue to the military judge. In his motion, defense counsel conceded that the evidence "may become admissible later on in the trial," and he limited the scope of his objection to the opening statement. It also did not satisfy the third prong, because the military judge made no "definitive" ruling on admissibility; he merely ruled that trial counsel could mention the evidence in his opening statement. *See United States v. Bledsoe*, 26 MJ 97, 102 (CMA 1988) (objection to opening statement not sufficient to preserve objection to evidence).

■ Because the issue was not preserved, we review for plain error. Appellant has the burden of persuading this Court that (1) there was an error; (2) that it was plain or obvious; and (3) that the error materially prejudiced a substantial right. *United States v. Carpenter*, 51 MJ 393, 396 (1999), citing *United States v. Powell*, 49 MJ 460, 464–65 (1998); *United States v. Reist*, 50 MJ 108, 110 (1999).

■ Appellant's argument focuses on the admissibility of TM2 K's statement to GMMSN Smith as a prior consistent statement under Mil.R.Evid. 801(d)(1)(B). Appellant asserts two possible motives for TM2 K to fabricate her rape complaint: (1) to preserve her romantic relationship with TM3 Hausmann, and (2) to preserve her relationship with GMMSN Smith. Defense counsel suggested during his cross-examination of TM2 K that her friendship with GMMSN Smith had blossomed into a romantic relationship at the time of the alleged rape. However, the record is not fully developed regarding TM2 K's relationships with either Hausmann or Smith, because the defense did not make a timely objection to the evidence. *See United States v. Allison*, 49 MJ 54, 57 (1998) (where multiple motives to fabricate are asserted, statement must precede only the one it is offered to rebut); *see also United States v. Johnson*, 35 MJ 17, 21 (CMA 1992) (purpose of objection is to allow parties and judge to address admissibility of evidence).

The record suggests that the evidence might have been admissible as present sense

impression or an excited utterance under Mil.R.Evid. 803(1) or 803(2), but again the record was not fully developed because of the absence of a timely objection. *See United States v. Chandler,* 39 MJ 119, 123–24 (CMA 1994) (statement not qualifying as prior consistent statement may be admissible as excited utterance).

We conclude that appellant has not carried his burden of showing an error, much less a plain or obvious error.

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.