**UNITED STATES**

v.

**Matthew S. KAHMANN, Private (E–1), U.S. Marine Corps.**

**NMCM 200200355.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 2 July 2001.

Decided 30 April 2003.

CDR George F. Reilly, JAGC, USN, Appellate Defense Counsel.

LT Lars C. Johnson, JAGC, USNR, Appellate Government Counsel.

Maj Robert A. Fuhrer, USMC, Appellate Government Counsel.

Before the Court *En Banc.*

BRYANT, Judge:

On 2 July 2001, a military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. The convening authority approved the adjudged sentence to confinement for 90 days, forfeiture of $695.00 pay per month for 3 months, and a bad-conduct discharge, but pursuant to the pretrial agreement suspended all confinement in excess of 30 days.

The case was originally submitted without specific assignment of error. On 12 June 2002, in an unpublished decision, Panel 3 of this Court *sua sponte* determined that the military judge committed plain error by the erroneous admission of the record of a prior summary court-martial without evidence of compliance with *United States v. Booker*, 5 M.J. 238 (C.M.A.1977), *as modified by, United States v. Mack*, 9 M.J. 300 (C.M.A.1980), and without evidence of a judge advocate review, as required by Article 64, UCMJ, 10 U.S.C. § 864. *United States v. Kahmann*, No. 200200355, 2002 WL 1343459 (N.M.Ct. Crim.App. 12 June 2002)(unpublished op.). In view of the perceived error, Panel 3 reassessed the sentence. On 25 June 2002, the Government requested *en banc* reconsideration of that decision. Motion to Reconsider *En Banc* of 25 Jun 2002. On 4 September 2002, we granted the Government's motion and specified the following issue for review:

IN THE ABSENCE OF DEFENSE COUNSEL OBJECTION, WHETHER THE MILITARY JUDGE ERRED BY ADMITTING EVIDENCE OF APPELLANT'S PRIOR SUMMARY COURT–MARTIAL WITHOUT ALSO REQUIRING A SHOWING OF COMPLIANCE WITH *UNITED STATES V. BOOKER*, 5 M.J. 238 (C.M.A.1977), *as modified by, UNITED STATES V. MACK*, 9 M.J. 300 (C.M.A.1980), AND COMPLETION OF A JUDGE ADVOCATE REVIEW, AS REQUIRED BY ARTICLE 64, UCMJ?

Court Order of 4 Sep 2002.

After considering the record of trial and briefs by the appellant and the Government filed in response to our 4 September 2002 Order, we answer the specified issue in the negative. We hold that the military judge properly admitted the evidence of the appellant's prior summary court-martial.

■ As explained in more detail below, we are not attempting to abrogate, by this decision, the mandate of *Booker/Mack* that a servicemember must be afforded an opportunity to consult with counsel prior to accepting nonjudicial punishment (NJP) or a summary court-martial in order for that disciplinary action to be admissible in aggravation at a subsequent court-martial. *See* Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7C § 0109 (Ch–3, 27 Jul 1998)(JAGMAN). Nor are we saying that the requirement for a post-trial review of a summary court-martial pursuant to Article 64, UCMJ is not a condition precedent for admissibility of that summary court-martial in aggravation at a servicemember's subsequent court-martial. We are merely saying that when, as in this case, the Government offers evidence of a prior summary court-martial in aggravation and there is *no objection* for lack of proof that a *Booker/Mack* advisory and/or an Article 64, UCMJ, review was completed, any issue as to the evidence's admissibility for the alleged failure to provide *Booker/Mack* advisory and/or conduct an Article 64, UCMJ, review is forfeited. *See* MIL. R. EVID. 103(a), MANUAL FOR COURTS–MARTIAL, UNITED STATES (2000 ed.). We presume compliance with *Booker/Mack* and Article 64, UCMJ, when trial defense counsel raises no objection at trial to the admission of a prior NJP or summary court-martial in aggravation.

Accordingly, we hold that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Background

During pre-sentencing, the trial counsel offered excerpts from the appellant's military service record. Prosecution Exhibit 1. Among the documents offered was a "Record of Conviction by Court–Martial (1070)." *Id.* at 9. The document (hereinafter "Page 13") reflected the appellant's punishment at sum-

mary court-martial on 30 August 2000 for a variety of UCMJ offenses, including Article 86, UCMJ, 10 U.S.C. § 886, unauthorized absence. But for one minor omission, all blocks on the front page of the pre-printed form document were complete.[1] Block "4A" of the Page 13 notes that the appellant "waived representation by counsel." *Id.* The Page 13, however, contains no specific space or block on the front page to reflect, nor does the document anywhere so reflect, whether the appellant was provided the opportunity to consult with counsel pursuant to *Booker/Mack* prior to accepting trial by summary court-martial, or whether the summary court-martial was reviewed by a judge advocate after trial pursuant to Article 64, UCMJ. Although objecting without success to the summary of the non-Article 86, UCMJ, offenses on the Page 13, trial defense counsel had no objection to the admission into evidence of the document itself. Record at 21–22.

### *Booker* and Its Progeny

In *United States v. Booker*, a divided Court of Military Appeals held that a record of a summary court-martial may not be admitted as a sentencing exhibit in a subsequent special or general court-martial unless the "exhibit … affirmatively establish[es] a valid waiver" of the right to consult with counsel prior to accepting punishment under Article 20, UCMJ, 10 U.S.C. § 820. *Booker*, 5 M.J. at 244. This requirement was subsequently extended to sentencing exhibits relating to NJP awarded pursuant to Article 15, UCMJ, 10 U.S.C. § 815. *United States v. Mathews*, 6 M.J. 357, 358 (C.M.A.1979). Under *Booker* and *Mathews*, if the document was insufficient on its face, regardless of whether there was a defense objection, the onus fell on the military judge to "conduct an inquiry *on the record* to establish the necessary information." *Booker*, 5 M.J. at 244;

*accord Mathews*, 6 M.J. at 358–59. These rulings were affirmed in *Mack*, 9 M.J. at 323.

The *Booker* Court did not specify the manner in which the record was to be developed or the level of proof required to overcome a deficiency on the face of the exhibit. In *Mathews*, our superior Court held that the military judge satisfied his obligation to develop the record where he questioned the accused and learned directly from him that the necessary advisement, followed by a valid waiver, had occurred. *Mathews*, 6 M.J. at 358–59. In *Mack*, our superior Court stated that where the exhibit lacks information concerning access to counsel, the document is "inadmissible despite defense failure to object, unless the Government independently establishes that such information was provided to the accused before he received nonjudicial punishment" or elected trial by summary court-martial. *Mack*, 9 M.J. at 321.

The *Booker*, *Mathews*, and *Mack* decisions required either the Government or the military judge to develop proof of advisement and waiver regardless of whether the defense raised an objection. Even in *Mack*, however, our superior Court acknowledged that the then-recent adoption of the Military Rules of Evidence foretold a change.[2] With the promulgation of the Military Rules of Evidence in 1980,[3] the legal landscape in which the above-cited decisions were made shifted dramatically.

Mil. R. Evid. 103, which has remained unchanged since its 1980 debut, imposes a general obligation on counsel to lodge a timely objection whenever counsel is opposed to the admission of evidence. This Rule provides in pertinent part:

(a) *Effect of erroneous ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless the ruling materially prejudices a substantial right of a party, and

---

1.  Block 7 does not indicate whether the "Disbursing Officer" was notified of the summary court-martial. *Id.*

2.  *See also United States v. Kline*, 14 M.J. 64, 66 (C.M.A.1982)(holding the military judge was under a *sua sponte* obligation to exclude a sentencing document as incompetent hearsay). In *Kline*, the Court specifically stated, citing *Mack*

as support, that "[o]f course, *United States v. Mack*, 9 M.J. 300 (C.M.A.1980), was a case tried before the effective date of the Military Rules of Evidence." *Id.* at n. 4.

3.  MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1969 (Revised ed.), Chapter XXVII (promulgated 1 Sep 1980).

(1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection....

....

(d) *Plain Error.* Nothing in this rule precludes taking notice of plain errors that materially prejudice substantial rights although they were not brought to the attention of the military judge.

The emergence of Mil. R. Evid. 103, and by implication its effect on the *Booker/Mack* rule, was first addressed by our superior Court in *United States v. Dyke*, 16 M.J. 426 (C.M.A.1983). In *Dyke*, the prosecution offered a record of NJP as a sentencing exhibit. The document was remarkable in that it contained:

> [N]o signatures—legible or otherwise—in any of the four places where normally a signature would have appeared: the commander had not signed to indicate that he had advised [Dyke] of his rights; [Dyke] had not signed to indicate whether he demanded trial by court-martial; the commander had not signed to attest the nonjudicial punishment that he was imposing; and [Dyke] had not signed to indicate his election as to an appeal.

*Id.* at 426. The document was received into evidence without defense objection. *Id.*

The *Dyke* Court acknowledged that its blanket prohibition against the admission of documents that did not comply with applicable regulations, whether or not there was a defense objection, developed in a pre-Mil. R. Evid. 103(a)(1) setting. *Id.* at 427. The *Dyke* Court noted that the Rules, however, placed "additional responsibility upon ... defense counsel" to raise a timely objection with respect to sentencing evidence, including any document relating to a prior punishment. In the absence of such an objection, the *Dyke* Court stated that a reviewing court should consider whether the admission of the document in question amounted to "plain error" under Mil. R. Evid. 103(d). *Id.* Looking

solely at the exhibit, the *Dyke* Court determined that:

> [A] purported record of nonjudicial punishment which has no signatures whatsoever—including no signature by the commander, who purportedly imposed the punishment—is such a deviation from customary practice that to receive it into evidence constitutes plain error.... [The] exhibit ... was so incomplete **on its face** that the judge should have excluded it on his own motion.

*Dyke*, 16 M.J. at 427 (emphasis added).

In *United States v. Kelly*, 45 M.J. 259 (1996),[4] another case decided well after the adoption of the Military Rules of Evidence, our superior Court reiterated the general viability of *Booker/Mack*. In quoting from *Mack*, however, the Court in *Kelly* provided guidance on the pivotal issue of this case. The issue in this case—unlike *Kelly*—is not whether the appellant must have been afforded an opportunity to consult with counsel before accepting summary court-martial for his earlier disciplinary proceeding to be admissible at this, his subsequent special court-martial. It is whether, **absent defense objection at trial,** evidence of the summary court-martial is inadmissible unless accompanied by other evidence that the appellant was afforded *Booker/Mack* advisement. On this issue, *Kelly* emphasized the critical part that an objection at trial plays. Quoting its earlier holding in *Mack*, the *Kelly* Court stated:

> Accordingly, in the words of the lead opinion in *Mack*:
>
> > "[A]n accused may properly **object** to admission of a record of prior nonjudicial punishment [or summary court-martial] which does not recite that he was offered some opportunity to consult with counsel. Also, even if the form purports to have offered him an opportunity for such consultation, the **objection** would be valid, if by credible evidence, he persuades the trial judge that, despite the form's recital to the contrary, he was not

---

**4.** In *Kelly*, our superior Court reversed this Court's earlier decision. In our decision, *United States v. Kelly*, 41 M.J. 833 (N.M.Ct.Crim.App. 1995), a case in which the appellant did object at trial to the introduction of an earlier summary

court-martial, we held that *Booker/Mack* was not controlling in light of *Nichols v. United States*, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). Our superior Court found that we exceeded our authority and reversed.

offered such an opportunity or that, although he exerted every reasonable effort to see a lawyer before receiving nonjudicial punishment [or summary court-martial], he could not do so. Under such circumstances the purported offer of an opportunity to consult with counsel is a sham or is illusory and should be disregarded."

*Kelly*, 45 M.J. at 264 (quoting *Mack*, 9 M.J. at 323)(emphasis added). Further emphasizing the critical nature of an objection at trial, the Court thereafter stated:

During the presentencing proceedings at appellant's special court-martial, the military judge admitted into evidence **over defense objection** a record of a previous summary court-martial that did not reflect that the appellant had been advised consistent with *Booker.* That ruling was error when made ... and it remains error under our holding today.

*Id.* (emphasis added). Although not specifically mentioning Mil. R. Evid. 103(a)(1), the repeated reference to the accused's/defense's option to object to the admission of a prior disciplinary action clearly evidences the fact that the Court in *Kelly* was fully cognizant of the evidentiary rule's implications.

*United States v. Edwards,* 46 M.J. 41 (1997), further illustrates the critical role a timely objection at trial plays in the admission of evidence of an earlier disciplinary action impacted by *Booker/Mack.* In *Edwards,* the appellant appealed the military judge's admission, over objection, of a prior NJP without a *Booker/Mack* advisory. The appellant argued that he received the NJP aboard a vessel that was not in an operational status at the time of his NJP and, therefore, the vessel exception to *Booker/Mack* was not applicable.[5] In setting aside this Court's affirmance of the military judge's admission of the NJP, our superior Court stated that:

Because the document appears regular on its face, defense counsel had the burden

of raising the issues as to the applicability of the vessel exception and *Booker. See United States v. Moschella,* 20 USCMA 543, 43 CMR 383, 1971 WL 12804 (1971)(official document entitled to presumption of regularity).

Once the defense **objection** was timely made and the defense asserted that the CONSTELLATION was undergoing long-term overhaul and was not an operational vessel, the military judge should have given the parties an opportunity to present evidence. If the defense had produced sufficient evidence to raise the *Booker* issue, the Government would have had the burden, as proponent of the evidence, to show compliance with *Booker* or the applicability of the vessel exception.

*Edwards,* 46 M.J. at 45–46 (emphasis added). In both *Kelly* and *Edwards* our superior Court could have easily reverted to its *per se* requirement that *Booker/Mack* advisement evidence is an essential condition precedent for the admissibility of any antecedent disciplinary action, regardless of whether an objection was offered at trial. They did not. Instead, in *Kelly* and *Edwards,* the Court unmistakably emphasized the need for the defense to interpose an objection at trial.

The purpose of requiring a trial objection is to allow the parties and the military judge to address any issue of admissibility and cure any defects at trial. *United States v. Cardreon,* 52 M.J. 213, 216 (1999). "The military judge should not exclude evidence which is not objected to by a party except in extraordinary circumstances." RULE FOR COURTS-MARTIAL 913(c)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Discussion. Our superior Court has frequently cited Mil. R. Evid. 103(a)(1) in denying objections to the admission of evidence made for the first time on appeal. *See United States v. Green,* 55 M.J. 76, 81 (2001); *United States v. Tarleton,* 47 M.J. 170, 172 (1997); *United States v. Davis,* 44 M.J. 13, 20 (1996). *See also United States v. Gordon,* 10 M.J. 278, 279

---

5. *See Edwards,* 46 M.J. at 43:

Of course, if the evidence relating to the nonjudicial punishment shows that the person being punished had no right to demand trial because he was "attached to or embarked in a vessel,"

then *Booker* is inapplicable. *See United States v. Mack,* 9 M.J. 300, 320 (CMA 1980)(*Booker* not intended to apply to persons "attached to or embarked in a vessel").

(C.M.A.1981)("Moreover, the defense counsel was specifically asked by the military judge whether he wanted to object to the admission of the challenged exhibit [NJP], but he declined to do so. Thus, even if we assume that error was committed by receiving the exhibit into evidence, it did not constitute plain error, and therefore was waived by the failure of defense counsel to interpose a timely objection to it at trial.").

The Army Court of Military Review, in *United States v. Taylor*, 12 M.J. 561 (A.C.M.R.1981), has specifically addressed *Booker/Mack* since adoption of the Military Rules of Evidence. In *Taylor*, a case involving the admission of a summary court-martial with neither *Booker/Mack* advisory documentation nor objection at trial, our brethren on the Army Court stated:

This does not end our concern, however, since this case was tried under the new Military Rules of Evidence (MRE). This Court has already held in *United States v. Beaudion*, 11 M.J. 838 (A.C.M.R.1981), that the erroneous admission of records of nonjudicial punishment bearing no discernable markings reflecting a lack of demand for trial and other elections is waived under MRE 103(a) in the absence of an objection. Bearing in mind that the purpose of MRE 103(a) is to litigate all such matters at the trial level and to permit evidentiary foundational defects to be cured by the offering party if possible, we believe the rule for *Booker* defects should be the same for summary court-martial records as for records of nonjudicial punishment.

In the instant case, there was no defense objection. Had there been one, the trial counsel may well have been able to lay a proper foundation through the testimony of a witness or by means of other available records. Thus, the error, not rising to the level of "plain error" contemplated in Rule 103(d), was waived.

*Taylor*, 12 M.J. at 562–63 (footnote omitted); *accord United States v. Sims*, 28 M.J. 578, 583 (A.C.M.R.1989); *United States v. King*, 27 M.J. 545, 549–50 (A.C.M.R.1988).

■ In light of our superior Court's emphasis on the responsibility of defense counsel to object and its adoption of the plain error analysis, as well as the Army service Court's position on this issue, we hold that the appellant in the case at bar failed to lodge a timely objection and, thus, forfeited his right to raise this issue on appeal, absent a finding by this Court of plain error. MIL. R. EVID. 103(a) and (d); *see Dyke*, 16 M.J. at 427.

### Article 64, UCMJ, Review

■ R.C.M. 1001(b)(3) clearly sets forth the general rule that allows, during pre-sentencing, evidence of an accused's prior court-martial conviction. The Rule. states that:

(A) *In general.* The trial counsel may introduce evidence of military ... convictions of the accused. For purposes of this rule, there is a "conviction" in a court-martial case when a sentence has been adjudged.

(B) *Pendency of appeal.* The pendency of an appeal therefrom does not render evidence of a conviction inadmissible except that a conviction by summary court-martial ... may not be used for purposes of this rule until review has been completed pursuant to Article 64[, UCMJ].

Article 64, UCMJ, states that any summary court-martial in which there have been findings of guilty "shall be reviewed by a judge advocate under regulations of the Secretary concerned." Such a review shall be in writing and include conclusions as to jurisdiction, whether the charges and specifications stated offenses, and whether the sentence was within the limits prescribed by law. *Id.* The "[m]ethod of proof" with respect to prior convictions is accomplished by bringing forth "any evidence admissible under the Military Rules of Evidence." R.C.M. 1001(b)(3)(C).

In published decisions from this Court, we have heretofore invoked forfeiture when the trial defense counsel did not object to the admission of a summary court-martial for failure to provide evidence of completion of review pursuant to Article 64, UCMJ. In *United States v. Williamson*, 42 M.J. 613 (N.M.Ct.Crim.App.1995), we said:

This record of summary court-martial was admitted without defense objection. The record contains no evidence of the

required review under Rule for Courts–Martial 1001(b)(3)(B) that would make this evidence admissible. The failure to object waives the error for our current review. Mil.R.Evid. 103.

*Williamson,* 42 M.J. at 618 n. 6. In this Court's *Kelly* decision, we said:

> Defense counsel did not object on grounds there was no showing the appellant had been advised of his right to object to trial by summary court-martial. That objection was, therefore, waived. *See United States v. Elston,* 34 M.J. 1036, 1038 (N.M.C.M.R.1992)(citing cases).... Defense counsel also did not object to the summary court-martial conviction on grounds it had not been shown that review had been completed. *See* Rule for Courts–Martial [R.C.M.] 1001(b)(3)(B). Likewise, that objection was waived. Mil.R.Evid. 103.

*Kelly,* 41 M.J. 833, 834 n. 5 (alteration in original).

As previously noted, the purpose of requiring a trial objection, be it for compliance with the *Booker/Mack* advisory, or Article 64, UCMJ, review, is to allow the parties and the military judge to address any issue of admissibility and cure any defects at trial. *Cardreon,* 52 M.J. at 216. Inasmuch as there was no objection at trial concerning the completion or not of an Article 64, UCMJ, review, the issue, like the *Booker/Mack* advisement issue, is forfeited. Mil. R. Evid. 103(a) and (d); *see Green,* 55 M.J. at 81; *Tarleton,* 47 M.J. at 172; *Davis,* 44 M.J. at 20. We find no compelling reason to overrule our previous decision in *Williamson.*

### No Plain or Obvious Error

■ "Plain error" as a legal term requires that an error in fact exists; that it be plain or obvious; and that it materially prejudices the substantial rights of the accused. *United States v. Finster,* 51 M.J. 185, 187 (1999); *United States v. Fuson,* 54 M.J. 523, 526 (N.M.Ct.Crim.App.2000). Assuming *arguen-*

*do* there was error in the admission of the summary court-martial for not attaching to the Page 13 evidence of *Booker/Mack* advisement, and/or evidence of an Article 64, UCMJ, review, for the reasons discussed in more detail below we find that the error was neither plain nor obvious. As such, we further find that in this case there was no plain error. Mil. R. Evid. 103(a) and (d).

In so deciding, we are mindful of Senior Judge Price's dissent wherein he references JAGMAN § 0109, and, specifically, its language that "[f]ailure to provide the opportunity for an accused to consult with counsel prior to nonjudicial punishment does not preclude the imposition of the nonjudicial punishment; it merely precludes the admissibility of the record ... in aggravation and a later court-martial." As Senior Judge Price notes, this particular provision is directed at documents relating to NJPs rather than summary courts-martial and, thus, its application to the case at bar is questionable. Assuming for the moment that the spirit of the JAGMAN does apply to the instant case, we nevertheless believe Senior Judge Price reads too much into this provision. The JAGMAN adopts the *Booker/Mack* advisory rule discussed above by precluding the admissibility of the service record entry whenever there is a "[f]ailure to provide *the opportunity for an accused to consult with an attorney.*" *Id.* (emphasis added). Absent from this provision, however, is any wording supporting Senior Judge Price's position that the failure to **document** the opportunity to consult with counsel works as an evidentiary bar to admission of the service record entry documenting the disciplinary action.[6] Nor does this JAGMAN provision do more than state a basis for not admitting the document; specifically, it does not purport to address the impact of the Military Rules of Evidence on this rule of admissibility. That, of course, is the issue we address today.

Senior Judge Price also makes reference to the U.S. Marine Corps Individual Records

---

**6.** A review of U.S. Navy Military Personnel Manual (MILPERSMAN) reveals that NJPs and summary courts-martial—as significant miscellaneous entries not provided for elsewhere in the regulations governing Naval service records-are documented by noting the date of the offense, the nature of the offense, the date of punishment, and the punishment awarded. *See* MILPERSMAN, Article 1070–320 §§ 1–4. There is no *requirement* that *Booker/Mack* advisory, or Article 64, UCMJ, review be documented anywhere in a Sailor's service record.

and Administration Manual (IRAM). Marine Corps Order P1070.12K (Ch–1, 14 Jul 2000). Specifically, he reads Section 4008, paragraph 2b(1) as specifically "call[ing]" for an appropriate entry on the reverse side of the Page 13 attesting that the Marine has been advised of his right and opportunity to consult with counsel. We note that the referenced provision states that compliance with *Booker/Mack* "*may* be accomplished by recording an entry on the reverse side" of the Page 13.[7]  IRAM § 4008, ¶ 2b(1)(emphasis added). The wording of the provision is, clearly, permissive in construction and not mandatory. Furthermore, no mention is made of how to notate the completion of an Article 64, UCMJ, review. Finally, absent from this regulation is any language prohibiting documents that do not contain this particular notation from being admitted at court-martial with or without objection.

Senior Judge Price elevates these administrative regulations to the status of "evidentiary prerequisites." However, the evidentiary prerequisites for this case are found in the Military Rules of Evidence, not service regulations. *See* R.C.M. 1001(b)(3)(C). Moreover, the case at bar involves a record of summary court-martial punishment offered under R.C.M. 1001(b)(3)(A), not an NJP offered under R.C.M. 1001(b)(2). The distinction is important, because unlike R.C.M. 1001(b)(2), R.C.M. 1001(b)(3)(A) does not require that the service record entry offered to establish prior punishment at a summary court-martial be "made or maintained in accordance with departmental regulations." *Compare* R.C.M. 1001(b)(2)(establishing compliance with departmental regulations as a prerequisite to the admission as evidence of "[p]ersonal data"), *with* R.C.M. 1001(b)(3)(A) (containing no such compliance requirement with respect to "[e]vidence of prior convictions"). Finally, even in cases involving a record of NJP offered under R.C.M. 1001(b)(2), neither the JAG Manual, the MILPERSMAN, nor the IRAM would preclude admission of a document that lacks a *Booker/Mack* advisory certification, because none of these regulations make the preparation of such a certification mandatory.

Additionally, both the appellant's and Senior Judge Price's reliance on *Dyke* is misplaced. In *Dyke*, our superior Court determined that "a purported record of nonjudicial punishment which has no signatures whatsoever . . . is such a deviation from customary practice that to receive it into evidence constitutes plain error." *Dyke*, 16 M.J. at 427.

In this case, not only is there no evidence of any "deviation from customary practice" in the completion of the Page 13, there is no suggestion it was "incomplete on its face." *Id.* The Page 13 was *prima facie* admissible. *See Edwards*, 46 M.J. at 45 (because the document appears regular on its face, defense counsel had the burden of raising the issues as to the applicability of the vessel exception and *Booker); Elston*, 34 M.J. at 1038–39 (N.M.C.M.R.1992)(record of NJP admitted at trial without objection was error, inasmuch as the record specifically indicated that the appellant had refused NJP); *United States v. Yarbough*, 30 M.J. 1292, 1296–97 (N.M.C.M.R.1990)(*en banc), aff'd*, 33 M.J. 122 (C.M.A.1991). There was no regulation

---

7.  The section reads in full is as follows:

(1) Reverse Side. Compliance with *U.S. Versus Booker*, 5 M.J. 238 (CMA 1977) and *U.S. Versus McLemore*, 10 M.J. 238 (CMA 1981). Before a summary court-martial (SCM) can be considered in aggravation at a subsequent court-martial, the above cases implies [sic] that a written statement is required to show that the accused was given the opportunity to consult with independent counsel prior to accepting trial by SCM, the accused did not exercise the right to refuse trial by SCM, and that acceptance of a trial by GCM [sic] does not preclude the command from taking other adverse administrative action against the accused. Compliance may be accomplished by recording an entry on the reverse side of the page 13, signed by the accused, prior to commencement of the trial. The following is an example of an entry which is sufficient for this purpose. Use of a rubber stamp is authorized.

"(Date). I certify I have been given the opportunity to consult with a lawyer, provided by the government at no cost to me, in regard to a pending SCM for violation of Article(s) _____ of the UCMJ. I understand I have the right to refuse that SCM; I(do) (do not) choose to exercise that right. I further understand that acceptance of trial by SCM does not preclude my command from taking other adverse administrative action against me. I (will) (will not) be represented by a civilian/military lawyer. Signature of Marine."

that *required* any notation either on the front or back of the Page 13 reflecting compliance with *Booker/Mack*. IRAM § 4008, ¶ 2b(1).

In sum, to overcome forfeiture of the issue by failure to object at trial, the admission of the Page 13 must have constituted plain error. A prerequisite for any plain error determination, assuming there was error, must be a determination that the assumed error was plain or obvious. Any such error in this case is hardly plain or obvious when, among other matters:

(1) it is at the *very least* debatable that the *Booker/Mack* advisory and Article 64, UCMJ, review are absolute prerequisites to admission of the Page 13, *i.e.*, there is no error, period (*see* MIL. R. EVID. 103(a) and (d));

(2) our superior Court has repeatedly stressed the critical role that objection at trial plays in the proper admission of evidence at the trial level (*see e.g.*, *Kelly*, *Edwards*, and *Cardreon*);

(3) this Court and our Army brethren, in published decisions, have specifically stated that any issue as to the admissibility is forfeited when there was no objection at trial (*see, e.g.*, *Williamson* and *Taylor*); and

(4) in unpublished cases over the years this Court has been less than consistent in our resolution of this issue.[8]

Additionally, there is no evidence in this record to indicate that *Booker/Mack* advice was not given to the appellant prior to his acceptance of the summary court-martial. Likewise, there is no evidence to indicate that a review pursuant to Article 64, UCMJ, was not completed. If there was a *Booker/Mack* advisory or Article 64, UCMJ, review, the Government would have been in a position to show as much in the event of an objection by the trial defense counsel. Stated another way, we view Mil. R. Evid. 103, previously cited service regulations, and our superior Court in *Kelly and Edwards* as saying that the Government's burden to establish a *Booker/Mack* advisory and/or Article 64, UCMJ, review compliance is not a standing obligation. The obligation to put forth evidence of compliance is only triggered by a timely objection from the defense or a *sua sponte* inquiry from the military judge.[9] Inasmuch as there was no objection

---

8. In the 1990's, a number of unpublished cases from this Court invoked forfeiture when trial defense counsel made no objection at trial to the admission of a prior disciplinary action. *See, e.g.*, *United States v. Harper*, No. 9602469, 1997 WL 654087 (N.M.Ct.Crim.App. 13 June 1997)(unpublished op.); *United States v. Hollingsworth*, No. 911351 (N.M.C.M.R. 31 Jan 1992)(unpublished op.); *United States v. Paasch*, No. 894389 (N.M.C.M.R. 26 Apr 1991); *United States v. Ellis*, No. 894248 (N.M.C.M.R. 22 Jan 1991)(unpublished op.); *United States v. Scott*, No. 901166 (N.M.C.M.R. 26 Sep 1990)(unpublished op.). By contrast, in the early 2000's a number of unpublished cases tested for prejudice under a plain error analysis when trial defense counsel made no objection at trial. *See, e.g.*, *United States v. Moore*, No. 200000980 (N.M.Ct.Crim.App. 29 Mar 2002)(unpublished op.); *United States v. Cross*, No. 200100691 (N.M.Ct.Crim.App. 15 Mar 2002)(unpublished op.); *United States v. James*, No. 200100280 (N.M.Ct.Crim.App. 30 Nov 2001)(unpublished op.). More recently, several unpublished cases have variously employed one or the other approaches. *Compare United States v. Gish*, No. 200101810 (N.M.Ct.Crim.App. 26 Mar 2003)(unpublished op.), *United States v. Hurst*, No. 200200924 (N.M.Ct.Crim.App. 23 Dec 2002)(unpublished op.), *and United States v. Hutton*, No. 200201056 (N.M.Ct.Crim.App. 23 Dec 2002)(unpublished op.), which test-

ed for prejudice, *with United States v. Adelsberger*, No. 200101497, 2002 WL 31914929 (N.M.Ct.Crim.App. 30 Dec 2002)(unpublished op.), *United States v. Sinclair*, No. 200200873 (N.M.Ct.Crim.App. 19 Dec 2002)(unpublished op.), *and United States v. Youmans*, No. 200101342 (N.M.Ct.Crim.App. 8 Oct 2002)(unpublished op.), which held any error was forfeited without conducting a plain error analysis.

9. By way of example, the responsible staff judge advocate is obliged by Article 60(d), UCMJ, 10 U.S.C. § 860, and R.C.M. 1106(c) to prepare a recommendation for consideration by the convening authority (CA) prior to the CA taking action on the findings and sentence. Should the staff judge advocate fail to fulfill this obligation, even in the absence of a timely objection by an appellant, the error will be tested for prejudice under a plain error analysis. The same cannot be said of the case at bar, where the Government's purported obligation to establish *Booker/Mack* advisory and/or Article 64, UCMJ review compliance was never triggered during trial. The Government was never called upon to justify the admission of the Page 13 relating to the appellant's summary court-martial and, therefore, it cannot be said that an alleged failure by the Government in this regard rises to the level of a plain or otherwise obvious error.

at trial, "trial counsel never had the opportunity to litigate those issues, and the military judge never was called upon to rule on the issues raised for the first time on appeal." *Tarleton*, 47 M.J. at 172. We, therefore, presume compliance with the *Booker/Mack* mandate and Article, 64, UCMJ. *See Edwards*, 46 M.J. at 45; *United States v. Masusock*, 1 C.M.A. 32, 35, 1 C.M.R. 32, 35, 1951 WL 1504 (1951)("evidence to the contrary" required to preclude presumption of regularity.).

As previously noted, the purpose of requiring a trial objection is to allow the parties and the military judge to address issues of admissibility of the evidence. *Cardreon*, 52 M.J. at 216. The appellant's position, if adopted, could encourage trial defense counsel not to litigate and resolve admissibility issues of a prior disciplinary action at the trial level, *i.e.*, play possum,[10] hoping that, perhaps years later, an appellate court might grant some type of windfall relief when the availability of records may have long-since evaporated.[11]

We see no justification in this case to depart from the clear language of Mil. R. Evid. 103(a)(1) and case precedent. Furthermore, we do not discern from applicable case law any requirement on the part of a military judge to make inquiry of the parties as to advisement pursuant to *Booker/Mack* or completion of Article 64, UCMJ, review concerning a prior summary court-martial offered into evidence, or to *sua sponte* exclude such a court-marital when no objection to the admissibility is made at trial. *Cf. William-*

son, 42 M.J. at 618 n. 6; *Kelly*, 41 M.J. at 834 n. 5; *Taylor*, 12 M.J. at 562–63.

However, while we discern no *sua sponte* requirement for action by a military judge absent objection, there is likewise absolutely nothing to prohibit a military judge from so inquiring of the parties as to the existence of a documented *Booker/Mack* advisory or Article 64, UCMJ review *sua sponte* as desired by the military judge.[12] A military judge is charged with deciding whether a party has established a sufficient foundation for admission of any evidence. MIL. R. EVID. 104(a). A military judge has considerable discretion in this regard. *See United States v. Catrett*, 55 M.J. 400, 406 (2001).

In this case, the military judge did not err in admitting evidence of the prior summary court-martial. Any arguable error was forfeited at the trial level by the appellant's failure to object. Even assuming *arguendo* it was error to admit evidence of the summary court-martial without supporting documentation of a *Booker/Mack* advisory and/or Article 64, UCMJ, review, any such error was neither plain nor obvious. As such, the assumed error did not constitute plain error. The appellant, therefore, is entitled to no relief.

### *Blunk* Advice

As noted in this Court's original decision, trial defense counsel erred when, during his sentencing argument, he advised the military judge that the appellant had requested a bad-conduct discharge against his advice. Record at 23; *see United States v. Lyons*, 36 M.J. 425, 427 (C.M.A.1993)("[D]efense coun-

10. "Possum Pos"sum, n. [Shortened from opossum.] An opossum.[Colloq. U.S.]. {To play possum}, {to act possum}, to feign ignorance, indifference or inattention, with the intent to deceive; to dissemble; in allusion to the habit of the opossum, which feigns death when attacked or alarmed." WEBSTER'S REVISED UNABRIDGED DICTIONARY (1913).

11. To adopt the appellant's position would "encourage the practice of 'sandbagging': suggesting or permitting, for strategic reasons, that the trial court pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error." *Freytag v. Commissioner*, 501 U.S. 868, 895, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991)(Scalia, J., concurring in part and concurring in the judgment); *see*

also *United States v. Reist*, 50 M.J. 108, 110 (1999)(stating that the rules are "designed 'to prevent defense counsel from remaining silent, making no objection, and then raising the issue on appeal for the first time, long after any possibility of curing the problem has vanished. It is important to encourage all trial participants to seek a fair and accurate trial the first time around.'").

12. If after being so highlighted by the military judge, a trial defense counsel still interposes no objection, then any issue of non-compliance with *Booker/Mack* or Article 64, UCMJ would be affirmatively waived vice forfeited. *See Gordon*, 10 M.J. at 279; *United States v. Quiroz*, 53 M.J. 600, 605 n. 15 (N.M.Ct.Crim.App.2000)(en banc).

sel should not disclose to the sentencing authority that his client is acting contrary to advice of counsel."); *United States v. Blunk*, 17 C.M.A. 158, 161, 37 C.M.R. 422, 425, 1967 WL 4281 (1967)(finding that defense counsel erred in "advising the court that accused, acting contrary to this advice, desired to present nothing in extenuation and mitigation"). Testing for prejudice, we remain satisfied that the sentence was warranted under the circumstances and was not inappropriately severe. *See United States v. Williams*, 57 M.J. 581, 582 (N.M.Ct.Crim.App.2002).

### Conclusion

Accordingly, after reconsideration *en banc*, the Court's decision dated 12 June 2002 is vacated and the findings and sentence, as approved on review below, are affirmed.

Chief Judge LEO, Senior Judge OLIVER, Judge CARVER, Judge VILLEMEZ, and Judge RITTER concur.

PRICE, Senior Judge (concurring in part and dissenting in part):

I concur in the majority's decision to affirm the findings and its conclusion that no material prejudice accrued from the *Blunk* error. However, I must respectfully dissent as to the majority's decision to affirm the sentence. In my view, the evidence of a prior summary court-martial (SCM) did not comply with relevant statutory law, Presidential rule, binding judicial precedent, departmental regulation and service regulation. Despite the absence of objection, the evidence was inadmissible *per se*. Under the circumstances of this case, I conclude that the appellant suffered material prejudice in the sentence as a result of the improper admission of the evidence and would reassess the sentence.

### The *Booker/Mack* Rule

Like the appellant, Private Larry D. Booker, U.S. Marine Corps, received SCM punishment before his conviction for assault and battery at a higher court-martial.[1] *United States v. Booker*, 5 M.J. 238 (C.M.A.1977). In fact, he went to SCM twice. The Government offered evidence of these SCMs to escalate the maximum permissible punishment. The military judge admitted this evidence, although the *Booker* decision does not say whether there was an objection at trial. On appeal, Private Booker contended the military judge erred in admitting this SCM evidence as prior convictions, based on a recent U.S. Supreme Court decision that held that a SCM was not a criminal proceeding within the meaning of the Sixth Amendment to the U.S. Constitution. *Id.* at 239.

In *Booker*, the Court of Military Appeals discussed the importance of obtaining the advice of a "legally trained person" before deciding whether to exercise the statutory right to object to trial by SCM. *Id.* at 243. The Court then established what has come to be known as the "*Booker* Rule:"

> [W]e believe it mandatory that the individual to be disciplined must be told of his right to confer with an independent counsel before he opts for disposition of the question at either of the above levels [Article 15, UCMJ, nonjudicial punishment (NJP) or Article 20, UCMJ, SCM]. Absent compliance with this proviso, evidence of the imposition of discipline under either *is inadmissible* in any subsequent trial by court-martial. A waiver of the statutory right under Articles 15 and 20 for removal to trial in a criminal proceeding must be in writing.

*Id.* (emphasis added)(footnote omitted). The Court then described the requirements for this waiver and the duty of the military judge as an evidentiary gatekeeper before admitting evidence of prior discipline:

> We believe that the Supreme Court's and this Court's longstanding position of requiring that every reasonable presumption against waiver of the assistance of counsel be indulged ... mandates that the record affirmatively demonstrate a valid *personal* waiver by the individual of his right to trial in a criminal proceeding rather than having us infer or assume one solely on the basis of a single check in a box on a prepared form. If the exhibit does not

---

1. The Court of Military Appeals did not specify in its opinion whether it was a special or general court-martial.

678

affirmatively establish a valid waiver, the trial judge must conduct an inquiry *on the record* to establish the necessary information.

*Id.* at 244 (citations and footnotes omitted). Two years later, the Court clarified and extended its position.

In *United States v. Mathews*, the Court applied the *Booker* Rule to prior NJP under Article 15, UCMJ. In doing so, the Court also explained that where the proffered documentary evidence of prior NJP does not clearly show the accused's waiver of his right to consult with counsel prior to acceptance of NJP, and *"where the defense counsel affirmatively waives objection to the admissibility of the exhibit, the onus then falls upon the trial judge to make the record."* *United States v. Mathews*, 6 M.J. 357, 358 (C.M.A.1979)(emphasis added).

Soon thereafter, the Court revisited the general issue. In *United States v. Mack*, the Court considered whether the military judge committed prejudicial error by admitting evidence of prior NJP. In its analysis, the Court stated:

The Manual for Courts–Martial provides in paragraph 75b(1) that where the defense [counsel] objects to the data [as to the accused's service] as being inaccurate or incomplete in a specified material particular, ... the military judge ... shall determine the issue. Objections not asserted may be regarded as waived.

This subparagraph does not apply to records of nonjudicial punishment. Paragraph 75d contains similar provisions as to personnel records, which "include all those records made or maintained in accordance with departmental regulations which reflect the past conduct and performance of the accused." Under our decisions the failure to object to an official record because it was not completed as required by applicable regulations has not relieved the military judge of the duty to exclude the document. Whatever changes, if any, may be made by the new Military Rules of Evidence, which took effect on September 1, 1980, we conclude that in trials before that date a Form 2627 [the Army form offered by the Government to show the

prior NJP] lacking the information about access to counsel which is required on the face of the form *is inadmissible despite defense failure to object,* unless the Government independently establishes that such information was provided to the accused before he received nonjudicial punishment.

*United States v. Mack*, 9 M.J. 300, 321 (C.M.A.1980)(emphasis added) (citations omitted). By this point, it should be clear that the Court had committed itself to the *Booker* Rule as to both NJP and SCM evidence and that it viewed the military judge as the gatekeeper for such evidence irrespective of any defense objection. As the Court suggested in *Mack*, it remained to be seen what its position would be once an appropriate case presented itself under the auspices of the newly-enacted Military Rules of Evidence, MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1969 (Revised ed.), Chapter XXVII (promulgated 1 Sep 1980).

That case soon appeared in the form of *United States v. Dyke*, 16 M.J. 426 (C.M.A. 1983), a unanimous decision. In *Dyke*, the Government offered a record of NJP lacking any signatures, including signatures attesting that Private Dyke had been advised of his rights and had chosen not to demand trial by court-martial. Without objection, the military judge admitted the exhibit. In its analysis, the Court first noted that "[i]n cases that arose prior to the Military Rules of Evidence, we held that the military judge had an obligation *sua sponte* to exclude a document that clearly did not comply with applicable regulations." *Dyke*, 16 M.J. at 427. Examining Mil. R. Evid. 103(a)(1), a rule quoted by my brother in his majority opinion, the *Dyke* Court noted that, generally speaking, failure to state an objection at trial waives the issue on appeal. However, Mil. R. Evid. 103(d) states an exception for "plain errors that materially prejudice substantial rights although they were not brought to the attention of the military judge." The Court then made a significant comment:

Although the Military Rules of Evidence were intended to place additional responsibility upon trial and defense counsel, we do not believe that they were meant to pro-

vide a license for slipshod performance by military judges. [The evidence of NJP] was so incomplete on its face that the judge should have excluded it on his own motion.

*Dyke,* 16 M.J. at 427. While *Dyke* represents an extreme example of lack of compliance with service regulations in documenting evidence of prior discipline, I read this case as an important indication of the Court's view of the interplay between the judicially-created *Booker* Rule (and its emphasis on the role of the military judge) and the Presidentially-created Military Rule of Evidence on waiver of issues (and its emphasis on the role of defense counsel). Of particular note, the Court had an opportunity in *Dyke* to scale back, or even overrule, *Booker* and its progeny in light of the new Military Rules of Evidence and declined to do so.

Thus, I believe that, for the last 20 years, the *Booker* Rule has stood as a solid fence against the entry of non-compliant evidence into the sentencing arena. The military judge stands at the only gate in the fence. He may allow only compliant evidence through that gate, regardless of defense objection.

In 1995, this court attempted to tear down that fence. In *United States v. Kelly,* 41 M.J. 833, 845 (N.M.Ct.Crim.App.1995), we held that, based on intervening U.S. Supreme Court case law, a "reexamination of *Booker*" was timely and appropriate and concluded that there was "no basis in law" to continue to apply the *Booker* Rule. Accordingly, we decided that the military judge did not err in admitting evidence of prior SCM punishment that did not comply with *Booker,* over defense objection. Since the defense did make a trial objection in *Kelly,* its value in analyzing the issue before us is limited. However, our superior Court's treatment of our holding in *Kelly* is instructive.

The Court of Appeals for the Armed Forces first rejected this Court's "effort to free itself from what appears to be binding precedent." *United States v. Kelly,* 45 M.J. 259, 263 (1996). In upholding and reaffirming the validity of the *Booker* Rule, the Court emphasized and explained the need for the rule:

The right [to refuse nonjudicial punishment and summary court-martial punishment] . . . is little more than theoretical if that accused is unaware of it when he decides whether to accept nonjudicial punishment or summary court-martial. An accused is not well-served by that situation, and neither is the system that Congress so artfully designed.

*Kelly,* 45 M.J. at 264. The majority opinion makes much of language in *Kelly* referring to an accused's right to object to non-compliant evidence, but that emphasis is misplaced in the case before us, which involves the specific and narrow question of admissibility in the absence of objection. *Kelly* does vividly illustrate the continuing viability of the *Booker* Rule despite this court's misguided attempt to abandon it.

I now turn from judicial treatment of the *Booker* Rule to regulatory implementation of the Rule. The Judge Advocate General of the Navy has promulgated a regulation that adopted, as a matter of binding policy for the Department of the Navy, the *Booker* Rule:

Failure to provide the opportunity for an accused to consult with counsel prior to nonjudicial punishment does not preclude the imposition of nonjudicial punishment; it merely *precludes the admissibility* of the record of nonjudicial punishment in aggravation at a later court-martial (unless the accused was attached to or embarked in a vessel at the time of the imposition of nonjudicial punishment)

Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7C § 0109 (Ch–3, 27 Jul 1998)(JAG Manual)(emphasis added). When the Judge Advocate General chooses to take a specific evidentiary question out of the universe of thousands of evidentiary issues that come before military judges and determines that regulatory policy is necessary, I believe that sets an unmistakable bar to admission of evidence of prior NJP that does not comply. Admittedly, the plain language of this provision applies only to NJP. However, given the general applicability of the *Booker* Rule to both NJP and SCM, the spirit of the Rule should compel military judges and this court to also apply

this JAG Manual provision to evidence of punishment by SCM.

In addition, the U.S. Marine Corps Individual Records and Administration Manual (IRAM), Marine Corps Order P1070.12K (Ch–1, 14 Jul 2000), includes rules on documentary compliance with the *Booker* Rule for punishment by SCM. Section 4008 controls the preparation of records of summary, special and general courts-martial. In preparing the page 13 form referred to in the majority opinion, (NAVMC(13)(REV.9–88)), Section 4008, paragraph 2b(1) calls for an appropriate entry on the reverse side of the page 13 indicating that Marine has been advised of his right and opportunity to consult with counsel regarding the pending SCM. That entry is missing from the appellant's page 13. Prosecution Exhibit 1. Moreover, we cannot find any such entry elsewhere in the record. As such, the page 13 has not been prepared in accordance with *Booker*-based, pertinent regulation and is not fair on its face.

The majority opinion correctly observes that these regulations do not explicitly establish evidentiary bars to admissibility in the event of failure to document *Booker* advice. However, when considered in the light of the *Booker* Rule, a rule that has never been overruled, the regulations emphasize the importance of affording the opportunity for attorney counseling in our system of military justice. Moreover, the regulations do strongly suggest,[2] as a minimum, that documentation of *Booker* counseling be completed. How are counsel and the military judge to know whether such counseling has been completed if it is not documented? [3]

Taken and read together as a whole, binding judicial precedent, departmental regulation and service-specific regulations establish and promulgate the *Booker* Rule and its applicability to evidence of prior SCM punishment. Prosecution Exhibit 1 did not comply with these evidentiary prerequisites. Ac-

cordingly, under these authorities, despite the absence of defense objection, I would hold that the military judge erred in admitting the exhibit.

### The Judge Advocate Review

Congress requires a judge advocate review for every SCM (assuming a guilty finding) conducted in the armed services. Article 64(a), UCMJ. The President has, in turn, made such a review an evidentiary prerequisite to consideration of a SCM as a matter in aggravation. R.C.M. 1001(b)(3) reads as follows:

> (3) *Evidence of prior convictions of the accused.*
>
> (A) *In general.* The trial counsel may introduce evidence of military or civilian convictions of the accused. For purposes of this rule, there is a "conviction" in a court-martial case when a sentence has been adjudged.
>
> (B) *Pendency of appeal.* The pendency of an appeal therefrom does not render evidence of a conviction inadmissible except that *a conviction by summary court-martial ... may not be used for purposes of this rule until review has been completed pursuant to Article 64.*

(Emphasis added).

For purposes of analysis of the specified issue in this case, the language of this rule is noteworthy as much for what is missing as for what is present. R.C.M. 1001(b)(1) and (2) govern the admissibility of service data from the charge sheet, and personal data and character of prior service from the service record book, respectively, in aggravation. The last sentence in each paragraph is "Objections not asserted are waived." Thus, the President has chosen to put the onus on the defense counsel to speak up if proffered evidence under these subsections is defective. Subsection (3), quoted above in pertinent part, has no similar language. Therefore, if the President believed that waiver should also be applied to the admissibility of a prior

---

2. If my position in this dissent is ultimately adopted by our superior Court, I recommend that the appropriate authorities amend the JAG Manual and the IRAM to explicitly require documentation of *Booker* counseling in order to eliminate any doubt in this area.

3. In a Navy and Marine Corps where units and individuals are constantly moving and transferring, we cannot, and need not, rely on live testimony from legal clerks and legal officers to document compliance.

SCM, he would have reiterated that same language at the end of subsection (3). In sum, Article 64(a), UCMJ, and R.C.M. 1001(b) require the Government to present evidence of a judge advocate review before a military judge may admit evidence of an SCM.

## Military Rule of Evidence 103

The majority relies principally upon the defense failure to object under Mil. R. Evid. 103(a)(1) in concluding that plain error did not occur in the admission of the SCM. For the following reasons, I respectfully disagree:

1. The plain language of R.C.M. 1001(b), as described above;

2. The rationale of our superior Court articulated in *Booker, Mathews,* and *Mack,* highlighting the singular importance of this particular evidentiary issue in deciding an appropriate sentence;

3. The plain language of *Dyke* emphasizing the role of the military judge as a gatekeeper, noting that the judge in that case "should have excluded ... [the defective NJP] on his own motion," despite the applicability of Mil. R. Evid. 103(a)(1);

4. The plain language of JAG Manual § 0109.

The majority opinion also expresses concern about the potential for "sandbagging" by the trial defense counsel who identifies a deficiency in the *Booker* or Article 64, UCMJ, foundation for a prior NJP or SCM. While I would normally join in that concern and appropriate responsive action by this court, I fail to see how the Government would be "blind-sided" when the Government controls the production, retention and disposition of the documents in question. If the trial counsel becomes aware that the accused has a prior NJP or prior SCM, he can offer the evidence of that prior discipline, including appropriate *Booker* and/or Article 64, UCMJ, foundation. If the necessary foundation is missing, as an officer of the court who is first and foremost interested in seeing that justice is done, he would not offer any evidence of the prior discipline. If, on the other hand, the trial counsel offers only the evidence of the prior discipline without bothering to obtain the appropriate foundation, the Government should not be heard to complain of sandbagging.

In addition, I offer a few personal thoughts based on my experience as a trial judge. In the Department of the Navy, of all special and general courts-martial convened annually, the vast majority are special courts-martial. *See* Annual Report of the Judge Advocate General of the Navy, October 1, 2000 to September 30, 2001, 56 M.J. CXVII–III. Of those special courts-martial, the vast majority are bench trials that result in a bad-conduct discharge. Thus, most of the cases we review under Article 66, UCMJ are special courts-martial featuring the stigma of a punitive discharge.

As a former special court-martial judge, I can attest that the toughest decision I had to make was whether to adjudge a bad-conduct discharge, particularly in a close case. One of the more significant sentencing factors in such a case is the presence or absence of evidence of prior discipline. As such, that evidence often takes on added importance, and must therefore be completely reliable. In my opinion, for the reasons expressed previously, evidence of prior SCM punishment is not completely reliable if it does not comply with *Booker* and Article 64, UCMJ. If such is the case for the military judge trained in the law and experienced in the practical vagaries of the imposition of discipline in the field, it is even more true for non-lawyer members of a special court-martial who must decide whether to impose a punitive discharge. I believe that is another reason why the President, our superior Court, and the Judge Advocate General have taken this particular evidentiary issue out of the universe of all court-martial evidentiary issues and imposed standing orders for the military judge who has the gatekeeper watch, regardless of defense objection.

## Prejudice

Under the circumstances of this case, I would find plain error resulting from the military judge's erroneous decision to admit the prior SCM. *United States v. Powell,* 49 M.J. 460, 461–65 (1998); *United States v. Fisher,* 21 M.J. 327, 328 (C.M.A.1986). Not only is the error plain and obvious, it materi-

ally prejudiced a substantial right of the appellant, because there is an appreciable risk that the court gave considerable weight to the prior SCM in sentencing. *See Kelly,* 45 M.J. at 264; *Dyke,* 16 M.J. at 427. The risk arises from the following factors: (1) the SCM punished the appellant for, among other offenses, unauthorized absence, the same type offense as we have in this case; (2) the trial counsel heavily emphasized that fact in his sentencing argument; and (3) the military judge then adjudged precisely the same sentence that the trial counsel requested. I am left with the impression that the military judge punished the appellant as much, or more, because he had been to a SCM previously, than for the instant offense.

### Conclusion

I would reassess the sentence and affirm only so much extending to confinement for 60 days, forfeiture of $695.00 pay per month for two months, and a bad-conduct discharge.

Senior Judge FINNIE joins in the opinion of Senior Judge PRICE.